

**JED M. SCHWARTZ**
*Partner*
55 Hudson Yards  |  New York, NY 10001-2163
T: +1 (212) 530-5283
jschwartz@milbank.com  |  milbank.com

April 3, 2023

**BY EMAIL**

Honorable Lorna G. Schofield
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

   Re: *Universal Entertainment Corporation et al. v. Alexander Eiseman et. al*,
      No. 23-cv-02250 (LGS)

Dear Judge Schofield:

  We represent Plaintiffs and respond to Defendants' pre-motion-to-dismiss letter (the "Letter"). As detailed below, Plaintiffs' current Complaint contains sufficient factual allegations to state a claim on all counts. Nevertheless, since the filing of the Complaint, Plaintiffs have learned significant new facts regarding Defendants' conduct. And, in light of these new facts, and subject to the Court's approval, Plaintiffs intend to file an Amended Complaint.

  Perhaps the most significant new fact relates to allegations that Defendants, while purporting to act as the advisor (among other roles) for Plaintiff UEC[1] in connection with a potential SPAC transaction with non-party 26 Capital (the "Merger"), actually had an undisclosed side-deal with 26 Capital to receive a substantial windfall. At the time of the Complaint, Plaintiffs were able to plead the existence of this side-deal based on inferences from a number of facts, including that (i) Defendants' principal, Alex Eiseman, had requested such a side-deal from another SPAC sponsor as a condition to introducing that sponsor to Plaintiffs, and (ii) when asked twice whether he had any such side-deal with 26 Capital related to the Merger, Eiseman both times refused to respond. But discovery in separate litigation relating to the Merger that is pending in the Delaware Court of Chancery (the "Delaware Action")[2] has confirmed the existence, and revealed the terms of, that undisclosed side-deal: 26 Capital gave Defendants, through their affiliate, the majority of the economic upside tied to closing the Merger. In other words, Defendants placed themselves on ***both sides of the transaction***, in an attempt to secure for themselves a windfall that would dwarf any amount Plaintiff would pay them for their work as a

---

[1] Capitalized terms not otherwise defined have the meaning given to them in the Complaint.
[2] *26 Capital Acquisition Corp. v. Tiger Resort Asia Ltd., et al.* (C.A. No. 2023-0128-JTL). The suggestion in Defendants' Letter that this litigation a "tactical lawsuit" designed to "dissuade Defendants from providing evidence or testimony" in the Delaware Action is nonsensical. ***Plaintiffs are the ones who subpoenaed Defendants in that case to provide discovery, and it is Defendants who are resisting discovery in that case***.

MILBANK LLP

NEW YORK  |  LOS ANGELES  |  WASHINGTON, D.C.  |  SÃO PAULO  |  FRANKFURT
LONDON  |  MUNICH  |  BEIJING  |  HONG KONG  |  SEOUL  |  SINGAPORE  |  TOKYO

Hon. Lorna G. Schofield
April 3, 2023                                                                                                               Page 2

UEC's broker, deal advisor, and investment banker. These facts bolster certain Plaintiffs' current claims (e.g., unjust enrichment), and give rise to new claims, including fraudulent inducement.[3]

As to Defendants' specific arguments regarding the claims, Plaintiffs respond as follows:

**Counts I and II**. Defendants argue they are not subject to the provisions of the Exchange Act or Investment Advisers Act because the Engagement Letters disclaimed responsibility for acting as a broker or adviser. But what matters is Zama's actual conduct. *See EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 59 (1st Cir. 2021) ("performance in fact" determines if a contract is voidable under the Exchange Act). A broker is "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. 15 U.S. Code § 78c(a)(4). The Complaint alleges that the Zama Defendants actively participated in the solicitation of potential investors in UEC and/or its subsidiaries through a SPAC transaction, including introducing 26 Capital to UEC, as well as took or agreed to undertake activities to effectuate the closing of the Merger, including soliciting investors in the Merger, and advising Plaintiffs on matters related to the closing of the Merger. *E.g.*, Comp. ¶¶ 27-33, 125-130. This behavior fits squarely within the SEC's definition of an M&A Broker, which is subject to the provisions of the Exchange Act. *See* M&A Brokers, 2014 WL 356983, at *1 (SEC No Action Letter, Jan. 31, 2014).

An investment adviser is someone that "(1) [p]rovides advice, or issues reports or analyses, regarding securities; (2) is in the business of providing such services; and (3) provides such services for compensation." *United States v. Elliot*, 62 F.3d 1304, 1310 (11th Cir. 1995). The Complaint alleges numerous facts meeting that definition, such as advising Plaintiffs on the closing of the Merger and associated SEC filings. *See, e.g.*, Compl. ¶¶ 68-71, 74, 136-138.

Any doubt as to the factual basis for pleading these claims would be removed in the Amended Complaint, which will attach a presentation the Zama Defendants prepared for UEC when seeking compensation under the Second Engagement Letter. That presentation states, among other things, that "[n]ormally, [UEC] would have formally hired ***an investment bank that would have provided similar services***" to what Zama LP provided, and compared Zama's compensation to that of brokers and advisors in other SPAC transactions. *See* Ex. A, at presentation slides 2-4.

**Counts III and IX**. As explained, Plaintiffs do have a basis to void the Engagement Letters. Thus, even under Defendants' theory, the unjust enrichment count is not duplicative. Regardless, the claim must survive because "where there is a 'bona fide dispute over the existence of the contract,' a claim for unjust enrichment must not be dismissed as duplicative of a breach of contract claim." *Murray Eng'g P.C. v. Remke*, 2018 WL 3773991, at *11 (S.D.N.Y. Aug. 9, 2018) (denying motion to dismiss). In any event, "[a]t the pleading stage, Plaintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims." *St. John's Univ. v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010). Moreover, when a party alleges fraudulent

---

[3] In their Letter, Defendants imply that Plaintiffs asked Zama to spoliate evidence when they asked Zama to return to Plaintiffs certain documents in their possession. That is a gross mischaracterization of the communication in question. And Defendants do not tell the Court that the documents in question are the privileged materials that Zama's principal Eiseman is alleged to have shared with the transaction counterparty, 26 Capital. Compl. ¶¶ 83-87.

inducement—as Plaintiffs will—it creates an additional basis for an unjust enrichment claim. *Tropical Sails Corp. v. Yext, Inc.*, 2015 WL 2359098, at *7 (S.D.N.Y. May 18, 2015) ("[A] claim for unjust enrichment is not duplicative of a breach of contract claim where the plaintiff alleges that the contracts were induced by fraud."). The unjust enrichment claims against Eiseman and Littlejohn may proceed regardless, because a plaintiff's "written agreement with [a contractual defendant] does not, as a matter of law, bar a claim for unjust enrichment against non-parties to that agreement whose alleged conduct falls outside of the subject matter of the agreement." *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 315 (S.D.N.Y. 2006). The rule that a claim is duplicative where it is premised on the same conduct as a breach of contract claim and damages are intrinsically tied to the contract damages should not foreclose Plaintiffs' claim at this point. The damages issues may be addressed on summary judgment.

**Counts IV, VI**. The Zama Defendants cannot disclaim their fiduciary and other duties to UEC because "where a writing erects the essential structure of an agency relationship, even an explicit disclaimer cannot undo it." *Veleron Holding, B.V. v. Morgan Stanley*, 117 F.Supp.3d 404, 452 (S.D.N.Y. 2015). The actual work performed by the Zama Defendants evidences a relationship of (misplaced) trust and confidence by UEC in the Zama Defendants. Accordingly, the Zama Defendants owed fiduciary duties to UEC.

**Count V**. Defendants confuse the standard for aiding and abetting breach of fiduciary duty. The question is not if Defendants were aware of the particulars of Philippine law, but rather if they had knowledge *of the breach*. *Melwani v. Lipton*, 2023 WL 1991423, at *6. The Complaint alleges facts showing that they did. *See, e.g.*, Complaint ¶¶ 68-70, 74, 84-87, 95-96, 162.[4]

**Count VII**. Defendants concede that if Plaintiffs' tort claims are adequately pled, as they have been, the conspiracy claim survives.

**Count X**. Defendants argue that this declaratory judgment claim fails because Plaintiffs have not alleged that the Zama Defendants acted with "gross negligence" or "willful misconduct." The Complaint, however, contains many such allegations, including Zama's leaking of confidential and privileged information to Plaintiffs' counterparty. Moreover, the new facts that Plaintiffs have discovered regarding the Zama Defendants' side-deal is clear evidence of both.

The foregoing demonstrates that the Complaint already adequately pleads numerous claims. But as noted, Plaintiffs intend to file an Amended Complaint. Plaintiffs request that the Court permit them 30 days to do so. This amount of time is necessary because (if Defendants refuse to cooperate) it may be necessary for Plaintiffs to file a request with the Delaware court for permission to use information produced in that case in the Amended Complaint.

Very truly yours,

/s/ *Jed M. Schwartz*
Jed M. Schwartz

---

[4] To the extent any notice under Rule 44.1 of the Federal Rules of Civil Procedure is required, Plaintiffs will provide that in the Amended Complaint.

# EXHIBIT A

| | |
|---|---|
| **From:** | Alexander Eiseman[alex@zamacap.com] |
| **Sent:** | 2021-10-20T02:59:59Z |
| **To:** | タケウチ トウジ[toji.takeuchi@hq.universal-777.com] |
| **Subject:** | Zama proposal |
| **Attachment:** | Zama proposal.pdf |
| **Attachment:** | Proposed services.xlsx |

Takeuchi-san,

As per our conversation on Tuesday morning, please find attached Zama's proposal for services. I very much appreciate your desire to retain us and look forward to continuing to work together.

I'd be happy to discuss further at your convenience.

Best regards,

Alex

Alexander H Eiseman
Managing Partner
Zama Capital
900 Third Avenue Suite 201
New York, NY 10022
(o) 212-418-1235
(c) 914-843-7668
alex@zamacap.com



# Universal Entertainment Corporation
Proposal Presentation – 2021

*This presentation, furnished on a confidential basis to the recipients, does not constitute an offer to sell, or the solicitation of an offer to buy, any securities or investment advisory services. It is intended exclusively for the use of the persons who are in attendance at this informational session, and it is not to be reproduced or redistributed to any other person without the prior consent of Zama Capital Strategy Advisors LLC*

Strictly confidential - Do not distribute



# Overview of Proposal

- Zama would like to congratulate Universal on successfully executing a merger agreement with 26 Capital Acquisition Corp. Although there is a very large amount of work to do over the next several months to close/list on NASDAQ, we believe that a critical first milestone has been achieved and the stock price movement on Monday shows the strong positive view of the market

- We had expected that the time and amount of work to get to this stage would have been less; however, Zama was not willing to sign with any SPAC partner other than the best fit for Universal and their unique asset

- Normally, Universal would have formally hired an investment bank that would have provided similar services for a large fee agreed from the beginning

- As long-term investors in Universal, we were happy to make introductions for no cost and decided to prioritize getting the best result for Universal rather than focusing on fees

- Given the huge amount of additional remaining work required, we believe that Zama can only provide the same high-quality assistance for appropriate services if properly compensated for our time and resources

2



## Zama would like to continue to offer the full range of its services for compensation that is significantly below other similar arrangements

- Zama Capital would like to propose total compensation of $10mm, including $2.5mm cash upfront and $7.5mm paid upon completion of work (open to multiple forms of cash or equity consideration)

- At the transaction value of $2.6bn for Okada Manila, typical total cash transaction expenses would be approximately $54-87mm (see comparable deal fees on next page)
  - Zama has been extensively involved to date and has institutional knowledge and relationships with the other advisors and with 26 Capital that would be challenging to replace
  - Zama's proposed compensation of $10mm would represent only 0.38% of the transaction value, and result in total transaction expenses being between 44-66% lower than normal, depending on how it is measured (see below)

*(In $M)*

| Comparison Based on Avg. Total Transaction Expenses | |
|---|---:|
| Okada Manila Enterprise Value | 2,600 |
| Avg. Total Deal Expenses for Similar-Sized Deals | 54 |
| As %age of EV | 2.08% |
| | |
| Total OM estimated expenses, including Zama | 30 |
| Proposed expenses as a percentage of deal amount | 1.15% |
| **Discount to standard expense amount** | **44.44%** |

| Comparison Based on Avg. Transaction Expense Percentage | |
|---|---:|
| Okada Manila Enterprise Value | 2,600 |
| Avg. Expenses as %age of EV for Similar-Sized Deals | 3.36% |
| Total Expected Transaction Expenses | 87 |
| | |
| Total OM estimated expenses, including Zama | 30 |
| Proposed expenses as a percentage of deal amount | 1.15% |
| **Discount to standard expense amount** | **65.68%** |

3



# Recent Comparable SPAC Merger Transactions

**Precedent SPAC Deal Economics**

*(Recent deals, $1bn-$3.5bn in EV)*

| SPAC | Target | Enterprise Value ($M) | Merger Execution announce date | Closed Date | Net Sponsor Shares | Sponsor Equity Ownership | Cash Deal Fees | Cash Deal Fees as %age of EV |
|---|---|---|---|---|---|---|---|---|
| M3-Brigade | Syniverse | 2,850 | 8/16/2021 | Ongoing | 7.0 | 3.7% | 130.0 | 4.6% |
| Atlas Crest | Archer | 2,525 | 2/10/2021 | 9/17/2021 | 12.5 | 3.0% | 63.0 | 2.5% |
| Sustainable Opportunities | DeepGreen | 2,378 | 3/4/2021 | 9/9/2021 | 6.8 | 2.0% | 60.0 | 2.5% |
| Qell Acquisition Corp | Lilium | 2,374 | 3/30/2021 | 9/15/2021 | 7.7 | 1.7% | 50.0 | 2.1% |
| Supernova Partners Acq. Co. | Offerpad | 2,368 | 3/18/2021 | 9/1/2021 | 10.1 | 3.8% | 60.0 | 2.5% |
| InterPrivate III Finance Co | Aspiration | 1,943 | 8/18/2021 | Ongoing | 6.8 | 3.0% | 49.0 | 2.5% |
| TPG Pace Tech | Nerdy | 1,700 | 1/29/2021 | 9/20/2021 | 9.0 | 5.0% | 55.0 | 3.2% |
| Motive Capital | Forge | 1,601 | 9/13/2021 | Ongoing | 10.4 | 7.5% | 60.0 | 3.7% |
| Rotor Acquisition | Sarcos Robotics | 1,300 | 4/6/2021 | 9/27/2021 | 6.4 | 3.6% | 50.0 | 3.8% |
| CM Life Sciences II | Somalogic | 1,234 | 3/29/2021 | Ongoing | 6.9 | 4.0% | 35.0 | 2.8% |
| Environmental Impact Acquisition | GreenLight | 1,230 | 8/10/2021 | Ongoing | 5.2 | 3.3% | 30.0 | 2.4% |
| Rice Acquisition Corp. | Archaea | 1,148 | 4/7/2021 | Ongoing | 6.2 | 5.0% | 62.0 | 5.4% |
| Osprey Technology | Black Sky | 1,106 | 2/18/2021 | 9/10/2021 | 7.9 | 5.3% | 53.0 | 4.8% |
| Centricus Acquisition | Aroit | 1,026 | 5/12/2021 | Ongoing | 8.6 | 6.0% | 40.0 | 3.9% |
| D8 Holdings | Vicarious Surgical | 1,100 | 4/15/2021 | 9/20/2021 | 8.6 | 5.6% | 33.0 | 3.0% |
| Cerberus Telecom Acq. Mgmt. | KORE Wireless | 1,010 | 3/12/2021 | 9/28/2021 | 7.3 | 8.1% | 39.0 | 3.9% |
| **Average** |  | **1,681** | **N/A** | **N/A** | **8.0** | **4.4%** | **54.3** | **3.4%** |
| **PROPOSED OKADA MANILA TRANSACTION** | | | | | | | | |
| **26 Capital Acquisition Corp.** | Okada Manila | 2,600 | 10/15/2021 | Ongoing | 6.9 | 2.4% | 30.0 | 1.2% |
| *%age from comp average* | | 54.7% | | | -13.7% | -44.4% | -44.8% | -65.7% |

**Proposed expense on OM's deal (including Zama) is far lower than average**

Source: Public filings

4



**900 Third Avenue**
**Suite 201**
**New York, NY 10022**
**Tel: +1-212-418-1235**
**alex@zamacap.com**

Strictly confidential. Do not distribute

Primary work expected to be required through close

| TASK | Responsibility |
|---|---|
| ***Post-Transaction Announcement through Listing and Post-Listing*** | |
| ***TRLEI Lease*** | |
| Valuation and analysis of utilized and excess land | UEC/Zama |
| Structuring of new lease arrangement | UEC/Zama |
| Documentation of new lease agreement | UEC/Zama/Legal |
| ***Intercompany Debt Push Down*** | |
| Analysis of intercompany debt/ordinary course receivables and payables | UEC/Zama |
| Negotiation of intercompany debt treatment | UEC/Zama |
| Structuring of intercompany debt treatment/tax considerations | UEC/Zama/Legal |
| Documentation of new intercompany debt arrangement | UEC/Zama/Legal |
| ***Governance and Compensation*** | |
| Create/review UEC independent board member candidate list | UEC/Zama |
| Ensure adherence to Nasdaq independence standards | UEC/Zama/Legal |
| Review 26 Capital board member candidate list | UEC/Zama |
| Coordinate background checks for board member candidates | UEC/Zama |
| Compose press release announcing selection of Okada Manila board members | UEC/Zama |
| Compensation benchmarking for executive/employee stock compensation pool | UEC/Zama |
| Develop an executive incentive compensation plan that is consistent with US listed company standards | UEC/Zama |
| Allocation of employee compensation pool and determination of vesting schedules and metrics | UEC/Zama |
| ***Business Strategy Consulting*** | |
| Evaluation of different business development opportunities | UEC/Zama |
| Analyze potential uses for excess land (including contacting and evaluating strategic development partners) | UEC/Zama |
| Review and assess proposals from 26 Capital | UEC/Zama |
| Advise on capital markets messaging to foreign equity investors for UEC | UEC/Zama |

| *Communication/Marketing Materials Post-Signing* | |
|---|---|
| Prepare talking points/FAQ's for discussions with key investors | UEC/Zama |
| Media plan development | UEC/Zama/26 Capital |
| Review roadshow presentation materials/FAQ's and iterative review with SPAC | UEC/Zama/26 Capital |
| Prepare Investor/Buy-Side Target List | UEC/Zama/26 Capital |
| Prepare Sell-Side Target List | UEC/Zama/26 Capital |
| Reach out to target investors for participation in roadshow meetings | UEC/Zama/26 Capital |
| Schedule roadshow meetings | UEC/Zama/26 Capital |
| Prepare investor day presentation and iterative review with SPAC | UEC/Zama/26 Capital |
| Prepare materials for posting on UEC Manila investor website | UEC/Zama |
| Select vendors for go-forward public earnings communications | UEC/Zama |

| *PCAOB Audit Completion* | |
|---|---|
| Liase with UHY for completion of key audit milestones | UEC/Zama |
| Selection of financial statement preparation vendor | UEC/Zama |

| | |
|---|---|
| Assit in preparing analysis, market data, marketing language, and background information materials for proxy | UEC/Zama/26 Capital/Legal |
| Review of draft proxy statements | UEC/Zama/26 Capital/Legal |
| Assist in review and response to first round SEC proxy comments | UEC/Zama/26 Capital/Legal |
| Assist in review and response to second round of SEC proxy comments | UEC/Zama/26 Capital/Legal |
| Compose press release announcing definitive proxy statement filed/effectiveness | UEC/Zama/26 Capital/Legal |

*Analyst Education & Marketing - Analyst Day*

| | |
|---|---|
| Develop analyst day agenda & attendee list | UEC/Zama/26 Capital |
| Draft save the date | UEC/Zama/26 Capital |
| Prepare analyst day presentation | UEC/Zama/26 Capital |
| Coordinate Webcast Logistics | UEC/Zama |
| Company model review (financial projections and KPIs) | UEC/Zama |
| Prepare FAQ talking points | UEC/Zama |
| Notify analysts of "save the date" | UEC/Zama/26 Capital |
| Finalize expected Q&A list | UEC/Zama |
| Presentation training and practice | UEC/Zama |
| Model maintenance/ update KPIs | UEC/Zama |
| Post presentation follow up with each analyst for feedback and continued education | UEC/Zama |

| *Investor Relations Website* | |
|---|---|
| Obtain vendor proposals | UEC/Zama |
| Assess proposals & select a vendor | UEC/Zama |
| Engage vendor & obtain draft contract | UEC/Zama |
| Negotiate & sign contract | UEC/Zama |
| | |
| *Bell Ringing Ceremony at Exchange* | |
| Coordinate bell ringing ceremoney/handle logistics | UEC/Zama |
| Bell ringing ceremony at Nasdaq exchange | UEC/Zama |
| | |
| *Exchange Agent Engagement* | |
| Exchange agent candidate list | UEC/Zama |
| Negotiate terms and select exchange agent | UEC/Zama |
| Coordinate KYC process with exchange agent | UEC/Zama |

| | |
|---|---|
| Webcast services | UEC/Zama |
| Wire (press) services | UEC/Zama |
| Conference calls & transcripts | UEC/Zama |
| Market Data Services (including surveillance/holder analysis) | UEC/Zama |
| Transfer agent | UEC/Zama |