# EXHIBIT B

February 17, 2021

Universal Entertainment Corporation

Ladies and Gentlemen:

We are pleased that Universal Entertainment Corporation ("**Company**") decided to engage Zama Capital Advisors LP ("**Zama**") to provide services with respect to analyzing special purpose acquisition companies, blank check companies, "shell company" (as defined Rule 405 under the Securities Act of 1933) or similar companies (collectively, "**SPACs**") as possible counter-parties to a Transaction (as defined below) with the Company. We look forward to working with you on this engagement, and have set forth below the agreed upon terms of our engagement. As we have discussed, we will work to make prospective introductions to SPACs and provide our assistance with respect to Transaction advice and Transaction negotiations with potential SPAC counterparties.

The Company acknowledges that Zama is an independent contractor and will not act in any other capacity including as a fiduciary to the Company. The Company acknowledges that it is not relying on the advice of Zama for general business, investment advice, financial, tax, legal or accounting matters as it is seeking and will rely on the advice of its own professionals and advisors for such matters, and that the Company will be solely responsible for finally considering and approving the terms and provisions of any Transaction. In recognition of the foregoing, the Company agrees that Zama and its affiliates (together, the "**Group**") is not required to restrict its activities as a result of this engagement.

The services provided hereunder can be terminated by written notification by either party at any time following the expiration of ten months from the date hereof (and not prior to then) (the "**Termination Point**"); provided, however, the other provisions of this agreement will survive such termination. During the time period prior to the Termination Point the Company agrees that neither it nor any of its affiliates, subsidiaries or representatives will independently (not in conjunction with Zama) directly or indirectly solicit, commence or continue negotiations regarding any Transaction involving Tiger Resort, Leisure and Entertainment, Inc. ("**TRLEI**") (or part of its business) and/or Tiger Resort Asia Limited ("**TRAL**") (or part of its business) and/or their respective businesses, affiliates or successor entities that directly or indirectly own the assets of the Company or of an affiliate of the Company in the Philippines, with any SPACs or any representatives or affiliates of any SPACs or enter into any Transaction or agreement with any SPAC or any affiliate of a SPAC related to any of the foregoing (whether or not named as such, legally binding or in writing). The Company further agrees that neither it nor any of its affiliates will take any action to circumvent the foregoing. "**Transaction**" means any merger, share exchange, asset acquisition or other acquisition, share purchase, reorganization or business combination between TRLEI (or part of its business) and a SPAC.

The Company agrees to keep the role of Zama under this Agreement and any services provided by Zama confidential and not to disclose such information to other parties except to its advisers and representatives who need to know such information for the purposes of evaluating a possible Transaction between the Company and a SPAC; provided that such advisers and representatives would be required to keep such information confidential. Furthermore, the Company agrees that it will not use any information provided by Zama except in connection with analyzing and pursuing a Transaction with a SPAC in conjunction with Zama. Zama agrees to keep information about the Company that is received from the Company after the date of this Agreement in confidence (the "**Non-Disclosure Obligation**") and will not disclose such information to other parties except to SPACs who have signed a confidentiality agreement or obligation with Zama and to advisers and representatives who have been retained by Zama to assist with the services under this Agreement or any potential Transaction; provided that such advisers and representatives would be required to keep such information confidential. Notwithstanding the foregoing, no party will have any obligation with respect to information under this paragraph if such information was already known by a party or is publicly known (or becomes public not through a breach of this paragraph) prior to disclosure,

Page 2

obtained from another party other than a party to this Agreement or its advisers or representatives or independently developed by a party. In addition, notwithstanding any provision in this paragraph to the contrary, each party agrees that each party will be able to make any disclosures required by law or requested by a regulatory agency.

The Company agrees to indemnify Zama as provided in Annex A hereto, the terms of which are incorporated into this agreement in their entirety. This agreement is governed by the laws of the State of New York, without regard to conflicts of law principles, and will be binding upon and inure to the benefit of the Company and Zama and their respective successors and assigns. The Company and Zama agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of either party with respect to any matter whatsoever relating to or arising out of any actual or proposed Transaction or the engagement of or performance by Zama hereunder. The parties to this agreement hereby submit to the exclusive jurisdiction of the federal or state courts located in the County of New York, State of New York in any proceeding arising out of or relating to this agreement, agrees not to commence any suit, action or proceeding relating thereto except in such courts, and waives, to the fullest extent permitted by law, the right to move to dismiss or transfer any action brought in such court on the basis of any objection to personal jurisdiction, venue or inconvenient forum. Neither this engagement, nor the delivery of any materials with this engagement, is intended to confer rights upon any persons not a party hereto (including security holders, employees or creditors of the Company) as against Zama or our affiliates or their respective directors, officers, agents and employees. Zama does not assume responsibility for the completeness or accuracy of any statements or information that may be provided or made by SPACs. Neither this agreement nor the receipt by Zama of confidential information nor any other matter shall give rise to any fiduciary, equitable or contractual duties (including without limitation any duty of trust or confidence) that would prevent or restrict the Group from acting on behalf of other customers or for its own account. Furthermore, the Company agrees that neither the Group nor any member or business of the Group is under a duty to disclose to the Company or use on behalf of the Company any information whatsoever about or derived from those activities or to account for any revenue or profits obtained in connection with such activities. This agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. Neither party may assign its rights or obligations under this agreement without the written consent of the other party and any assignment in violation of the foregoing will be null and void. This agreement may only be amended or waived by a writing signed by each party to this agreement. The use of "or" in this agreement is not exclusive and shall be deemed to mean "and/or".

We are delighted to accept this engagement and look forward to working with you on this matter. Please confirm that the foregoing is in accordance with your understanding of our agreement by signing and returning to us a copy of this letter.

Very truly yours,

ZAMA CAPITAL ADVISORS LP

By: *(signature)*
Name: Alexander H Eiseman
Title: Managing Partner

Accepted and agreed to as of
the date set forth above:

Page 3

Universal Entertainment Corporation

By: _[signature]_
Name: Jun FUJIMOTO
Title: Representative Director and President

Page 4

## Annex A

In connection with the engagement of Zama to provide consultancy services to the Company as described in the attached engagement letter, inclusive of any changes or modifications to such services (the "**Engagement**"), the Company agrees that it will indemnify and hold harmless Zama and its affiliates and their respective directors, officers, agents and employees and each other person controlling Zama or any of its affiliates (each, an "**Indemnified Party**"), to the full extent lawful, from and against any losses, expenses, claims or proceedings including shareholder actions (collectively, "**Losses**") (i) related to or arising out of (A) the contents of oral or written information provided by Zama, its affiliates and their respective employees or its other agents, which information either the Company, Zama or their respective affiliates provide to any SPACs or their affiliates or (B) any other action or failure to act by Zama, its affiliates and their respective employees or its other agents or by Zama or any Indemnified Party in accordance with and at the Company's request or with the Company's consent, or (ii) otherwise related to or arising out of the Engagement or any Transaction or conduct in connection therewith, except that this clause (ii) shall not apply with respect to any Losses to the extent such Losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such Indemnified Party ("**Uncovered Losses**"). The Company further agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or any of its affiliates, creditors or security holders for or in connection with the Engagement or any actual or proposed Transactions or other conduct in connection therewith except for Losses incurred by the Company to the extent such Losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such Indemnified Party.

The Company agrees that it will not, without the prior written consent of Zama, settle any pending or threatened claim or proceeding related to or arising out of the Engagement or any actual or proposed Transactions or other conduct in connection therewith (whether or not Zama or any Indemnified Party is a party to such claim or proceeding) unless such settlement includes a provision unconditionally releasing Zama and each other Indemnified Party from all liability in respect of claims by any releasing party related to or arising out of the Engagement or any Transactions or conduct in connection therewith. Zama will not settle any claims or actions for which it seeks indemnification or contribution hereunder without the consent of the Company, not to be unreasonably withheld. The Company will also promptly reimburse each Indemnified Party for all reasonable expenses (including reasonable counsel fees and expenses) as they are incurred by such Indemnified Party in connection with investigating, preparing for, defending, or providing evidence in, any pending or threatened claim or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not Zama or any Indemnified Party is a party to such claim or proceeding) or in enforcing this Annex.

The foregoing provisions are in addition to any rights any Indemnified Party may have at common law or otherwise and shall be binding on and inure to the benefit of any successors, assigns, and personal representatives of the Company and each Indemnified Party. The provisions of this Annex shall remain in full force and effect notwithstanding (i) any investigation made by or on behalf of Zama or (ii) the completion or termination of the Engagement.