

**JED SCHWARTZ**
*Partner*
T: +1 (212) 530-5283
JSchwartz@milbank.com  |  milbank.com

May 9, 2023

**VIA ECF**

Hon. Lorna G. Schofield
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Universal Entertainment Corp. et al. v. Alexander Eiseman, et al.*, No. 23-cv-02250 (LGS)

Dear Judge Schofield:

      We respond to Defendants' pre-motion-to-dismiss letter dated May 2, 2023 (the "Letter"). As detailed below, Plaintiffs' Amended Complaint contains sufficient factual allegations to state a claim on all counts. Defendants make a baseless argument that Plaintiffs have filed this action to distract from core issues in a related case pending in the Delaware Court of Chancery. This is simply untrue. Zama LP's[1] principal, Alex Eiseman, posed as a trusted advisor to UEC and recommended a SPAC merger transaction (the "Merger") to UEC and told UEC to forgo standard protections for a SPAC target, while never disclosing to Plaintiffs that Eiseman actually owned the majority of the economic interest in Plaintiffs' merger counterparty (26 Capital). This egregious conduct, as well as other facts alleged in the Amended Complaint, gives rise to Plaintiffs' claims, including those asserted under the Exchange Act and the Investment Advisors Act.

      **Counts I and II.** Defendants argue that they are not subject to the provisions of the Exchange Act or Investment Advisers Act because the Engagement Letters do not explicitly call Defendants brokers or advisers. But what matters is Zama's actual conduct. *See EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 59 (1st Cir. 2021) ("performance in fact" determines if a contract is voidable under the Exchange Act). A broker is "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. 15 U.S. Code § 78c(a)(4). An investment adviser is someone that "(1) [p]rovides advice, or issues reports or analyses, regarding securities; (2) is in the business of providing such services; and (3) provides such services for compensation." *United States v. Elliot*, 62 F.3d 1304, 1310 (11th Cir. 1995). The Amended Complaint alleges numerous facts meeting that definition, such as advising

---

[1] Capitalized terms not otherwise defined have the meaning given to them in the Amended Complaint.

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | BEIJING | HONG KONG | SEOUL | SINGAPORE | TOKYO

Hon. Lorna G. Schofield
May 9, 2023                                                                                                                    Page 2

Plaintiffs on the closing of the Merger and associated SEC filings. *See, e.g.*, Am. Compl. ¶¶ 71-74, 77, 145-147. The Amended Complaint alleges that the Zama Defendants actively participated in the solicitation of potential investors in UEC and/or its subsidiaries through a SPAC transaction, including introducing 26 Capital to UEC, as well as took or agreed to undertake activities to effectuate the closing of the Merger, including soliciting investors in the Merger, and advising Plaintiffs on matters related to the closing of the Merger.[2] *E.g.*, Am. Comp. ¶¶ 31-38, 131-139. This behavior fits squarely within the SEC's definition of an M&A Broker, which is subject to the provisions of the Exchange Act. *See M&A Brokers*, 2014 WL 356983, at *1 (SEC No Action Letter, Jan. 31, 2014). Indeed, in an exhibit attached to the Amended Complaint, Zama Defendants stated, among other things, that "[n]ormally, [UEC] would have formally hired an investment bank that would have provided similar services" to what Zama LP provided, and compared Zama's compensation to that of brokers and advisors in other SPAC transactions. *See* Am. Compl., Ex. D, at presentation slides 2-4.

      **Counts IV and VI.** The Zama Defendants cannot disclaim their fiduciary and other duties to UEC because "where a writing erects the essential structure of an agency relationship, even an explicit disclaimer cannot undo it." *Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 452 (S.D.N.Y. 2015). Here the Engagement Letters clearly create an agency relationship between Plaintiffs and Defendants. For example, Appendix A to the Second Engagement Letter makes clear that Zama was responsible for negotiating terms of multiple agreements on behalf of UEC, which is a classic agency function. Further, the actual work performed by the Zama Defendants evidences a relationship of (misplaced) trust and confidence by UEC in the Zama Defendants. Accordingly, the Zama Defendants owed fiduciary duties to UEC. And, because Defendants owe fiduciary duties to Plaintiffs and because Defendants were negligent in fulfilling these duties, Plaintiffs adequately pled a negligence claim. S*ee e.g.* Am. Compl. ¶ 169.

      **Count VII.** Plaintiffs adequately pled their claim for fraud by alleging that Defendants placed themselves on both sides of the transaction, in an attempt to secure for themselves a windfall that would dwarf any amount Plaintiff would pay them for their work as UEC's broker, deal advisor, and investment banker. Defendants claim that Plaintiffs did not plead the time, place, and content of specific representations made by Zama, in order to satisfy the requirements of FRCP 9(b). However, the Amended Complaint clearly asserts on July 12, 2021, Eiseman, on behalf of Defendant Zama Capital Master Fund, LP, and 26 Capital entered into a secret subscription agreement. Am. Compl. ¶¶ 47-48. And the Amended Complaint further alleges that Eiseman and Zama entered into the Second Engagement Letter, and engaged with plaintiffs for months while purporting to act as their advisor. This is clearly enough to put Defend on notice of Plaintiffs' claims.

      Defendants also argue that Plaintiffs failed to meet the standard for fraud by omission. First, this is not fraud by omission because Defendants made active misrepresentations to Plaintiffs. Am. Compl. ¶¶ 92-95. Regardless, Plaintiffs meet the standards for fraud by omission.

---

[2] For this reason *Omega Overseas, Ltd. v. Griffith*, 2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) and *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75 (S.D.N.Y. Aug. 18, 2020) are inapposite: the Engagement Letters contemplated Zama engaging in broker-dealer and investment adviser services and could not have been satisfied otherwise.

Hon. Lorna G. Schofield
May 9, 2023                                                                                                                                Page 3

The First Engagement Letter between states that UEC is relying on Zama LP for "considering and approving the terms and provisions of any Transaction." *See* Am. Compl. Ex. B, at 2. And Plaintiffs stated in the Amended Complaint that if they had known that Zama LP "was actually the majority investor in their counterparty, they would not have entered into" the Merger agreement. Am. Compl. ¶ 176. Defendants had a duty to accurately inform Plaintiffs about the terms of the Merger—including the identity of UEC's true counterparty—and did not do so. This omission caused Plaintiffs to enter into and extend the date for completing the Merger transaction that they would not have entered into if they had known the omitted facts.

**Count III and X.** Defendants' argument that Plaintiffs' claim for breach of the implied covenant is duplicative of Plaintiffs' contract claim is erroneous because, as detailed above, Plaintiffs have a basis to void the Engagement Letters. Where there a 'bona fide dispute over the existence of the contract,' a claim for unjust enrichment must not be dismissed as duplicative of a breach of contract claim." *Murray Eng'g P.C. v. Remke*, 2018 WL 3773991, at *11 (S.D.N.Y. Aug. 9, 2018) (denying motion to dismiss). Moreover, when a party alleges fraudulent inducement—as Plaintiffs have—it creates an additional basis for an unjust enrichment claim. *Tropical Sails Corp. v. Yext, Inc.*, 2015 WL 2359098, at *7 (S.D.N.Y. May 18, 2015) ("[A] claim for unjust enrichment is not duplicative of a breach of contract claim where the plaintiff alleges that the contracts were induced by fraud."). The unjust enrichment claims against Eiseman and Littlejohn may proceed regardless, because a plaintiff's "written agreement with [a contractual defendant] does not, as a matter of law, bar a claim for unjust enrichment against non-parties to that agreement whose alleged conduct falls outside of the subject matter of the agreement." *Hughes v. BCI Int'l Holdings, Inc.*, 452 F. Supp. 2d 290, 315 (S.D.N.Y. 2006).

**Count VIII.** Defendants concede that if Plaintiffs' tort claims are adequately pled, as they have been, the conspiracy claim survives. Defendants also argue that Plaintiffs have failed to allege that Defendants had a "meeting of the minds" to engage in a conspiracy. This is false. Plaintiffs' allegations regarding the secret subscription agreement between Eiseman, on behalf of Zama Fund, and Ader are clearly a meeting of the minds. Am. Compl. ¶¶ 47-48.

**Count V.** The Amended Complaint alleges facts that show that Toji Takeuchi breached his fiduciary duties to UEC and that Defendants had knowledge of this breach. *See, e.g.*, Am. Compl. ¶¶ 71-73, 77, 88-91, 100-101, 179.

**Count IX.** Defendants (erroneously) argue that they were allowed to share Plaintiffs' confidential information, and thus, Plaintiffs' claims for breach of contract must be dismissed. This is a factual dispute that cannot be resolved on a motion to dismiss. And even if Defendants were correct, Plaintiffs adequately allege a number of alternative grounds for their breach of contract claim. These include allegations that Defendants conspired with 26 Capital and Takeuchi to convince the UEC Board to extend the Termination Date against its own interest and worked to have an accounting firm create shadow financial statements without approval. Am. Compl. ¶ 184.

**Count XI.** The Amended Complaint contains many allegations that Defendants failed to perform their contracted responsibilities in a competent manner. These include allegations of Defendants' secret subscription agreement with 26 Capital and Defendants' leaking of confidential information to 26 Capital. *See e.g.* Am. Compl. ¶¶ 47-48, 157.

Hon. Lorna G. Schofield
May 9, 2023                                                                                                          Page 4

                                      Very truly yours,

                                      <u>/s/ Jed M. Schwartz</u>

                                      Jed M. Schwartz

cc:      All counsel of record (via ECF)