# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNIVERSAL ENTERTAINMENT CORPORATION, UE RESORTS INTERNATIONAL, INC. f/k/a OKADA MANILA INTERNATIONAL, INC. and TIGER RESORT, LEISURE AND ENTERTAINMENT, INC., <br><br>        Plaintiffs, <br><br>   v. <br><br> ALEXANDER EISEMAN, ZAMA CAPITAL ADVISORS LP, ZAMA CAPITAL STRATEGY ADVISORS LLC, ZAMA CAPITAL MASTER FUND, LP and CHRISTIAN LITTLEJOHN <br><br> Defendants. | Case No. 23-CIV-2250 (LGS) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION, PURSUANT TO FED. R. CIV. P. 9(b), 12(b)(1), AND 12(b)(6), OF DEFENDANTS ALEXANDER EISEMAN, ZAMA CAPITAL ADVISORS LP, ZAMA CAPITAL STRATEGY ADVISORS LLC, ZAMA CAPITAL MASTER FUND, LP AND CHRISTIAN LITTLEJOHN TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL STATEMENT ........................................................................................2

ARGUMENT ...........................................................................................................8

I.    THE ENGAGEMENT LETTERS CANNOT BE VOIDED UNDER SECTION 29(B) ...............................................................................................................8

     A.    Plaintiffs Are Foreign Entities And Therefore Cannot Take Advantage Of Section 29(b) Of The Exchange Act .......................................................9

     B.    Statute Of Limitations Has Run On Count I ..........................................9

     C.    The First Engagement Letter Cannot Be Voided Under Section 29(b) .................10

     D.    The Second Engagement Letter Cannot Be Voided Under Section 29(b)............12

II.   THE SECOND ENGAGEMENT LETTER CANNOT BE VOIDED UNDER § 215(B) OF THE INVESTMENT ADVISERS ACT OF 1940 .........................................16

III.  IF COUNTS I AND II ARE DISMISSED, THIS ENTIRE ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION ..........................17

IV.  ZAMA DOES NOT OWE FIDUCIARY DUTIES TO PLAINTIFFS ............................18

V.   PLAINTIFFS' FRAUD CLAIM (COUNT VII) FAILS AS A MATTER OF LAW ........19

VI.  PLAINTIFFS' REMAINING CLAIMS ALSO FAIL AS A MATTER OF LAW ...........21

CONCLUSION.........................................................................................................25

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alter v. Bogoricin*,
   No. 97 CIV. 0662 (MBM), 1997 WL 691332 (S.D.N.Y. Nov. 4, 1997)...............................25

*Anderson v. Binance*,
   No. 1:20-CV-2803 (ALC), 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) .........................9, 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).......................................................................................................2

*Aubrey v. New Sch.*,
   No. 21-CV-4915 (KMK), 2022 WL 3867832 (S.D.N.Y. Aug. 30, 2022).............................22

*Aviles v. S&P Glob., Inc.*,
   No. 17CV2987JPOKHP, 2022 WL 1467589 (S.D.N.Y. Feb. 25, 2022)....................19, 20, 21

*Bogart v. Shearson Lehman Bros.*,
   No. 91 Civ. 1036 (LBS), (NG), 1993 WL 33643 (S.D.N.Y. Feb. 3, 1993)...........................16

*Carnegie–Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988).................................................................................................................18

*Cavello Bay Reinsurance Ltd. v. Stein*,
   No. 18-CV-11362 (KMK), No. 18-CV-11362 (KMK), 2020 WL 1445713
   (S.D.N.Y. Mar. 24, 2020) *aff'd,* 986 F.3d 161 (2d Cir. 2021).................................................9

*Chen Gang v. Zhao Zhizhen*,
   799 F. App'x 16 (2d Cir. 2020) ...............................................................................................24

*Consol. Bus Transit, Inc. v. Treiber Grp., LLC*,
   948 N.Y.S.2d 679 (2d Dept. 2012) ..........................................................................................21

*Cooper v. Parsky*,
   140 F.3d 433 (2d Cir. 1998)......................................................................................................18

*Corsello v. Verizon New York, Inc.*,
   18 N.Y.3d 777 (2012) ...............................................................................................................22

*DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*,
   No. 21 CIV. 11222 (ER), 2023 WL 199196 (S.D.N.Y. Jan. 17, 2023)......................................9

*DeHuff v. Digital Ally, Inc.*,
   No. CIVA 308CV327TSL-JCS, 2009 WL 4908581 (S.D. Miss. Dec. 11,
   2009) .........................................................................................................................................14

*Dervan v. Gordian Grp. LLC*,
    No. 16-CV-1694 (AJN), 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017)...................................11

*EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*,
    6 F.4th 50 (1st Cir. 2021) ..............................................................................................15, 16

*Ema Fin., LLC v. AppTech Corp.*,
    No. 21-CV-06049 (LJL), 2022 WL 4237144 (S.D.N.Y. Sept. 13, 2022) .........................8, 15

*Frati v. Saltzstein*,
    No. 10 CIV. 3255 (PAC), 2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) ...............................8

*Golub Cap. LLC v. NB Alternatives Advisers LLC*,
    21-cv-3991 (LJL), 2022 WL 540653 (S.D.N.Y. Feb. 22, 2022) ..........................................24

*Hartline v. Gallo*,
    546 F.3d 95 (2d Cir. 2008)..................................................................................................23

*Jalak Jobanputra v. Yoon Kim*,
    No. 21 CIV 7071 (ER), 2022 WL 4538201 (S.D.N.Y. Sept. 28, 2022) ...............................11

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
    970 F.2d 1030 (2d Cir. 1992)..............................................................................................17

*LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*,
    10 F. Supp. 3d 504 (S.D.N.Y. 2014)...................................................................................19

*Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*,
    653449/2015, 2016 WL 6680458 (Sup. Ct. N.Y. Cnty.) ....................................................22

*Melwani v. Lipton*,
    No. 17CIV8308PGGSLC, 2023 WL 1991423 (S.D.N.Y. Feb. 14, 2023).............................23

*In re Merril Lynch Ltd. Partnerships Litigation*,
    154 F.3d. 56 (2d. Cir. 1998)................................................................................................18

*Mueller v. Michael Janssen Gallery PTE. Ltd.*,
    225 F. Supp. 3d 201 (S.D.N.Y. 2016).................................................................................22

*Omega Overseas Partners, Ltd. v. Griffith*,
    No. 13-CV-4202 RJS, 2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) ...................................16

*Pearlstein v. Scudder & German*,
    429 F.2d 1136 (2d Cir. 1970)................................................................................................8

*Quantum Cap., LLC v. Banco de los Trabajadores*,
    No. 1:14-CV-23193-UU, 2016 WL 10536988 (S.D. Fla. Sept. 8, 2016) ............................11

*R.M. Bacon, LLC v. Saint-Gobain*,
    959 F.3d 509 (2d Cir. 2020)......................................................................24

*Rapillo v. Fingerhut*,
    09-CV-10429 (VSB), 2016 WL 11705140 (S.D.N.Y. Sept. 14, 2016) ...................16

*In re Refco Sec. Litig.*,
    No. 08 CIV. 3065 JSR, 2012 WL 607612 (S.D.N.Y. Feb. 17, 2012) ....................23

*Seippel v. Jenkens & Gilchrist, P.C.*,
    341 F. Supp. 2d 363 (S.D.N.Y. 2004)..........................................................18

*In re Synchrony Fin. Servs. Litig.*,
    988 F.3d 157 (2d Cir. 2021)........................................................................2

*Underwood v. Coinbase Glob., Inc.*,
    No. 21 CIV 8353 (PAE), 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023)...............8, 9

*Zerman v. Jacobs*,
    510 F. Supp. 132 (S.D.N.Y.), *aff'd,* 672 F.2d 901 (2d Cir. 1981) ............8

*Zinn v. Parrish*,
    644 F.2d 360 (7th Cir. 1981) ......................................................................17

## **Statutes**

15 U.S.C. § 80b-2(a)(11) ..............................................................................16, 17

28 U.S.C. § 1367..........................................................................................18

Exchange Act § 3(a)(4)(A) ............................................................................13

Exchange Act § 29(b) ...........................................................................*passim*

Investment Advisers Act of 1940 § 215(B) ....................................................16, 17

Fed. R. Civ. P. 9(a) ..................................................................................20, 21

Fed. R. Civ. P. 12(b)(1)....................................................................................1

Fed. R. Civ. P. 12(b)(6).....................................................................................1

Defendants Alexander Eiseman, Zama Capital Advisors LP ("ZCA LP"), Zama Capital Strategy Advisors LLC ("ZCSA LLC"), Zama Capital Master Fund, LP ("Zama Fund"), and Christian Littlejohn respectfully submit this Memorandum of Law in support of their motion ("the Motion to Dismiss"), pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the First Amended Complaint ("First Amended Complaint" or "FAC") (Dkt. 33) filed by plaintiffs Universal Entertainment Corporation ("UEC"), UE Resorts International, Inc. f/k/a Okada Manila International, Inc. and Tiger Resort, Leisure and Entertainment, Inc.

## PRELIMINARY STATEMENT

Plaintiffs in this action are defendants in a pending action in Delaware Chancery Court (the "Delaware Action"), where they are seeking to exit a merger agreement they signed with a Special Purpose Acquisition Vehicle ("SPAC") called 26 Capital Acquisition Corp. ("26 Capital").[1] Plaintiffs do not seek to exit that transaction because the transaction is not good for their shareholders—indeed, given Plaintiff UEC's stock jumped 10% upon announcement of the merger.  Instead, the Delaware Action has been commandeered by two executives at UEC's subsidiary—Hans Van Der Sande and Byron Yip—who no longer believe that the proposed merger with 26 Capital will suit their personal interests (*e.g.*, millions of dollars in bonuses and lax corporate governance).

The gravamen of Plaintiffs' First Amended Complaint in front of this Court appears to be that Zama defrauded UEC into entering the merger agreement that is the subject of the Delaware Action.  Plaintiff's claims of fraud against Zama fail for many reasons.  But for the purposes of this motion, Plaintiffs' fraud claims against Zama fail because the First Amended Complaint does

---

[1]  Defendants here are not parties to the Delaware Action, but they have been issued third-party subpoenas and have produced nearly 20,000 documents to the parties litigating in Delaware.

not identify any fraudulent statements (or omissions) that Zama made to Plaintiffs. Plaintiffs' fraud claims also fail because of the various contractual protections that Zama negotiated for in two Engagement Letters that it signed with UEC, including, *inter alia*: (1) an agreement from UEC expressly stating that it would ***not*** rely on Zama for advice regarding any SPAC transaction; (2) the right for Zama to both trade for its own account and not have to restrict (or disclose) its activities in any way; and (3) an express disclaimer that Zama did not owe UEC any duties, fiduciary or otherwise. These factors will be dispositive on any claim premised on the notion that Zama fraudulently induced UEC to enter into any merger agreement.

Given these contractual protections Zama negotiated for in the two Engagement Letters that it signed with UEC, it should come as no surprise that Plaintiff UEC is desperately seeking to invalidate the two contracts it signed with Defendant ZCSA LLC and Defendant ZCA LP. For the reasons set forth below, this Court should not permit UEC to void the Engagement Letters, and it should dismiss each of the claims (including the fraud and breach of fiduciary duty claims) with prejudice.

## **FACTUAL STATEMENT[2]**

Plaintiff UEC is a publicly traded company in Japan. FAC ¶1. UEC's most valuable asset is a casino located in the Philippines called the Okada Manila Resort. FAC ¶1. UEC has long sought to list the Okada Manila Resort on the Philippines stock exchange in an attempt to highlight

---

[2]    All Exhibits referenced herein refer to exhibits attached to the declaration of Anil Makhijani, filed simultaneously with this brief. For the purpose of resolving this motion, this Court need only consider the First Amended Complaint and exhibits attached thereto, including the two Engagement Letters. *See* Dkt. 33, 33-2 (first engagement letter), and 33-3 (second engagement letter). The Court need not, but can also consider Ex. 1 of the Makhijani Declaration, which is incorporated by reference in the complaint at paragraphs 35 and 132 and therefore can be properly considered on a motion to dismiss. *See, e.g., In re Synchrony Fin. Servs. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021) ("[A]t the motion to dismiss stage, courts 'may consider . . . documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.'") (*citing ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007)).

the value of the asset to the market.

Defendant Zama is a New York-based investment manager and activist investor. FAC ¶12, 14. Zama has been a shareholder of UEC since 2017. FAC ¶35. In its role as a shareholder of UEC, Zama developed a relationship with a senior executive at the company named Toji Takeuchi, who served as UEC's de-facto head of investor relations from 2018 onwards. FAC ¶31. In addition to serving as the head of investor relations, Mr. Takeuchi also served as the head of corporate planning at UEC (the equivalent of chief strategy officer at a US company) and helped lead UEC's corporate governance efforts.[3] As activist investors often do, Zama regularly provided ideas to Mr. Takeuchi (and other members of senior management) regarding how UEC could improve shareholder value. *See, e.g.,* FAC ¶31.

**Potential Listing On A US-Based Exchange**

In the summer of 2020, Zama proposed an idea to UEC: rather than listing the Okada Manila Resort on the Philippines stock exchange (as was being contemplated independently by UEC), it should instead list the asset on a United States-based exchange. FAC ¶2. Listing the resort in the United States (rather than the Philippines) would provide: (1) greater visibility to the asset; (2) improved corporate governance; and (3) increased access to a larger, lower-cost capital pool. *Id.* UEC and its President Jun Fujimoto were supportive of this idea. Mr. Takeuchi explained to Mr. Eiseman that UEC's three most important criteria for any merger transaction: (1) Okada Manila Resort's valuation; (2) the ownership percentage the Okada Manila Resort would have to give up in any public listing; and (3) the total cost of listing the asset.

After receiving UEC's approval to further explore this US-based listing idea, Zama

---

[3]    *See*    https://www.sec.gov/Archives/edgar/data/1822912/000121390021053165/ea148997ex99-1_26capital.htm at 7 (noting Mr. Takeuchi is "Executive Officer & Head of the Corporate Planning Division and Board Member"; noting Mr. Takeuchi "has served in various senior management roles" at UEC).

facilitated the introduction of UEC to a SPAC called Leisure Acquisition Corp. ("LACQ"). FAC ¶31. LACQ and UEC ultimately negotiated a letter of intent whereby LACQ would acquire stock of the Okada Manila Resort. In return, the Okada Manila Resort would achieve the public listing that it had long sought. UEC did not anticipate raising any capital in connection with the LACQ transaction.

For various reasons, the proposed deal between UEC and LACQ fell through—partly because LACQ found another merger partner and partly because Zama informed UEC that LACQ may not be an ideal merger partner for UEC. Instead of doing the deal with LACQ, Zama offered to help introduce UEC to a SPAC partner that would be a better fit for its goals. FAC ¶31.

### The First Engagement Letter

In connection with Zama's offer to help find a SPAC partner, UEC's President Jun Fujimoto requested that Zama sign an engagement letter. Ex. 1. The parties extensively negotiated the engagement letter before it was signed. After Alexander Eiseman (ZCA LP's managing partner) sent a draft of the First Engagement Letter to Mr. Takeuchi for review, Mr. Takeuchi asked Mr. Eiseman: "*I don't see any advisory fee clause in the transaction.* Zama Capital Advisors LP does not need any fees? I just want to make sure." Ex. 1 (emphasis added).

In response, Mr. Eiseman stated to UEC that ZCA LP did not need any fees from UEC: "Yes, that is correct, *we do not need any fees from Universal*." *Id.* (emphasis added). Mr. Eiseman further explained how ZCA LP intended to earn money: "[w]e have been shareholders [of UEC] since 2017 following the departure of Mr. Okada and believe that the stock price will more than double with the right deal, and secondly, *we might want to participate in the SPAC deal.*" *Id.* (emphasis added). At the time, UEC never pushed back on Mr. Eiseman's stated intent of Zama to "participate in the SPAC deal," and Zama specifically negotiated provisions in the First

Engagement Letter that would permit it to participate in any SPAC deal.

On February 17, 2021, after several rounds of negotiation and legal review, ZCA LP and Universal Entertainment Corporation signed an engagement letter (the "First Engagement Letter"). Dkt. 33-2. The First Engagement Letter provided, *inter alia*, that:

- Zama would not be paid any fees whatsoever from UEC. Dkt. 33-2.

- "Zama is an ***independent contractor*** and ***will not act in any other capacity including as a fiduciary to the Company***." Dkt. 33-2 at 2 (emphasis added).

- "The Company [UEC] acknowledges that it is not relying on the advice of Zama for general business, investment advice, financial, tax, legal or accounting matters as it is seeking and will rely on the advice of its own professionals and advisors for such matters, and that ***the Company will be solely responsible for finally considering and approving the terms and provisions of any Transaction***." Dkt. 33-2 at 2 (emphasis added).

- "Zama and its affiliates [are] ***not required to restrict its activities*** as a result of this engagement." Dkt. 33-2 at 2 (emphasis added).

- "Neither this agreement nor the receipt by Zama of confidential information ***nor any other matter shall give rise to any fiduciary, equitable or contractual duties*** (including without limitation any duty of trust or confidence) that would prevent or restrict the Group from acting on behalf of other customers or for its own account." Dkt. 33-2 at 3 (emphasis added).

- "Furthermore, ***the Company agrees that neither [Zama or its affiliates] is under a duty to disclose*** to the Company or use on behalf of the Company any information whatsoever about or derived from those activities ***or to account for any revenue or profits obtained in connection with such activities***." Dkt. 33-2 at 2 (emphasis added).

**Performing Under The First Engagement Letter**

Over the next several months, ZCA LP diligently performed under the First Engagement Letter. By July of 2021, Zama did precisely what it told UEC it intended to do: (1) it introduced UEC to a high quality SPAC ("26 Capital") led by a Jason Ader, a legendary investor and operator in the gaming sector; and (2) it participated in 26 Capital's Sponsor (in the form of a passive, at-risk investment), just as it told UEC it intended to do. FAC ¶¶38-39, 47-48. 26 Capital and UEC ultimately negotiated a $2.5 billion equity valuation, hundreds of millions of dollars greater than

what LACQ and UEC had indicated an interest to transact at.[4]

On October 15, 2021, 26 Capital and certain Plaintiffs signed a merger agreement (the "Merger Agreement") whereby Plaintiff UERI would merge with 26 Capital and become a publicly-listed company on NASDAQ. FAC ¶43. After the Merger Agreement was signed, UEC's stock price rose by 10%, demonstrating just how good a deal this was for UEC.[5]

**The Second Engagement Letter**

On October 28, 2021, UEC signed an engagement letter with ZCSA LLC (the "Second Engagement Letter"). Dkt. 33-3 at 2. In this Second Engagement Letter, ZCSA LLC agreed to provide certain specific "strategy and business consulting services" to UEC. *Id.* Those specific services to be completed were described in detail in an appendix to the engagement letter. *Id.* at 7-10. The Second Engagement Letter did not have any commission-based payment, *i.e.*, payment based on the specific terms of the Merger Agreement or the number/size of investors who may one day invest in the SPAC. *Id.* The payment terms of the Second Engagement Letter were also not at all tied to a successful deal with 26 Capital. Instead, pursuant to the express terms of the Second Engagement Letter, ZCSA LLC was paid a flat $2.5 million fee following the execution of the Second Engagement Letter, and will be paid $7.5 million (in either cash or stock, at UEC's election) if its business and consulting services are successfully able to lead to the Okada Manila Resort achieving a public listing. *Id.* at 2. ZCSA LLC is entitled to this $7.5 million whether this NASDAQ listing happened with 26 Capital or any other entity, *i.e.*, the payment is not tied to a deal with 26 Capital.

As with the First Engagement Letter, the Second Engagement Letter contained: (1) broad

---

[4]     *See*    https://www.sec.gov/Archives/edgar/data/1822912/000121390021053165/ea148997ex2-1_26capital.htm (showing "Company Equity Value" of $2,500,350,350.00).

[5]   https://finance.yahoo.com/quote/6425.T/news?p=6425.T

waiver of fiduciary duties; (2) agreement from UEC that it was not relying on advice from Zama related to the merger (or otherwise); (3) an agreement from UEC that Zama would not have to restrict its trading or investment activities in any way; and (4) an agreement that Zama had no duty to disclose any of its trading or investment activities. *Id.* at 2.

Given this was the first time Mr. Eiseman had ever engaged in this type of "business and strategy consulting services," he created a new entity called Zama Capital Strategy Advisors LLC to contract with UEC and to receive the $2.5 million payment. FAC ¶57. UEC paid ZCSA LLC $2.5 million in November of 2021. *Id.*

### Performing Under The Second Engagement Letter

ZCSA LLC performed the tasks assigned to it under the Second Engagement Letter. Unfortunately, however, for reasons not relevant for the purposes of resolving this motion, Okada Manila Resort President Byron Yip and CFO Hans Van Der Sande ultimately soured on the proposed merger with 26 Capital and tried, in vain, to find ways to exit the transaction. They accomplished this, *inter alia*, by initiating frivolous investigations into Zama and by disrupting the preparation of audited financial statements, which were necessary for certain SEC filings related to the merger. FAC ¶¶76, 83, 118-120. Yip and Van Der Sande also commissioned their counsel Milbank to prepare certain memorandum, which purported to outline a path for the Okada Manila Resort to exit the Merger Agreement through underhanded litigation tactics (*e.g.*, stating that 26 Capital would not be able to afford to litigate). FAC ¶87. Zama was also falsely accused of being an "agent" of 26 Capital, notwithstanding the fact that Zama does not and has never had any agency or services contract with 26 Capital. (Zama's investment in the SPAC sponsor has always been entirely passive, with no control or agency provisions.) These delays continued through the start of 2023.

On February 2, 2023, 26 Capital sued certain of the Plaintiffs in this case in Delaware Chancery Court for specific performance in order to close the transactions contemplated in the Merger Agreement. FAC ¶126.

On March 16, 2023, Plaintiffs initiated this action against Defendants. Dkt. 1. On April 15, 2023, Plaintiffs filed their First Amended Complaint. Dkt. 33.

## ARGUMENT

## I. THE ENGAGEMENT LETTERS CANNOT BE VOIDED UNDER SECTION 29(B)

In the First Amended Complaint, UEC seeks to void the First Engagement Letter and the Second Engagement Letter under Section 29(b) of the Exchange Act. "To establish a violation of Section 29(b), a plaintiff must show that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the defendant[s], and (3) he is in the class of persons the [Exchange] Act was designed to protect." *Underwood v. Coinbase Glob., Inc.*, No. 21 CIV. 8353 (PAE), 2023 WL 1431965, at *10 (S.D.N.Y. Feb. 1, 2023) (alterations in original; internal quotation marks omitted). "Under Section 29(b), only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts." *Ema Fin., LLC v. AppTech Corp.*, No. 21-CV-06049 (LJL), 2022 WL 4237144, at *6 (S.D.N.Y. Sept. 13, 2022) (internal quotation marks omitted); *see also Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y.) (same), *aff'd,* 672 F.2d 901 (2d Cir. 1981). In other words, a contract can be rescinded under Section 29(b) *only if* the contract itself cannot be performed legally under its plain terms. *Frati v. Saltzstein*, No. 10 CIV. 3255 (PAC), 2011 WL 1002417, at *6 (S.D.N.Y. Mar. 14, 2011) ("There is, however, no reason to believe that the contracts themselves could not be legally performed—a fact which is fatal to Plaintiffs' claim."); *see also Pearlstein v. Scudder & German,* 429 F.2d 1136, 1149 (2d Cir. 1970) (noting a contract cannot be voided under Section 29(b) because "the contract was not in violation of any provision of the statute or any rule or regulation; its performance would not have involved

any violation if Pearlstein had done as he was obligated; and the court is not here asked to enforce anything that constitutes a violation.") (Friendly, J. dissenting).

In assessing whether a contract involves a "prohibited contract," Courts will typically analyze whether the "underlying contract . . . require[s] the defendant to act as a dealer." *DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, No. 21 CIV. 11222 (ER), 2023 WL 199196, at *11 (S.D.N.Y. Jan. 17, 2023) ("Courts in this District have, however, held that in § 29(b) actions, a defendant's failure to register as a dealer does not make the transaction 'prohibited,' where the underlying contract does not require the defendant to act as a dealer. ***Indeed, courts have routinely dismissed such actions***.") (emphasis added).

A. **Plaintiffs Are Foreign Entities And Therefore Cannot Take Advantage Of Section 29(b) Of The Exchange Act**

A Section 29(b) claim can only be brought by a member of the "class of persons that the Exchange Act was designed to protect." *Underwood,* No. 21 CIV. 8353 (PAE), 2023 WL 1431965, at *10. In this case, each of the Plaintiffs are foreign entities and therefore do not belong to "the class of persons that the Exchange Act was designed to protect." *Cavello Bay Reinsurance Ltd. v. Stein*, No. 18-CV-11362 (KMK), No. 18-CV-11362 (KMK), 2020 WL 1445713, at *10 (S.D.N.Y. Mar. 24, 2020) (dismissing a claim under Section 29(b) of the Exchange Act because, "due to [the Plaintiff's] mostly foreign connections, it follows that Plaintiff is not in the class of persons the Act was designed to protect") *aff'd,* 986 F.3d 161, 163 (2d Cir. 2021) (upholding District Court's dismissal of Section 29(b) claim due to Plaintiff's foreign connections). Count I should therefore be dismissed in its entirety on this basis alone.

B. **Statute Of Limitations Has Run On Count I**

Count I also fails because "Section 29(b) [of the Exchange Act] has a one-year statute of limitations" from when the Plaintiff believes there has been a violation of law. *Anderson v.*

*Binance*, No. 1:20-CV-2803 (ALC), 2022 WL 976824, at *3 (S.D.N.Y. Mar. 31, 2022) (one year statute of limitations started accruing once plaintiff realized that defendant had not registered as an exchange). Here, the First Amended Complaint pleads that UEC long understood Zama to be an investor in UEC, not a registered broker-dealer. *See* FAC ¶35 ("Eiseman expressed to management of UEC and the Operating Company on multiple occasions that Zama LP had a significant investment in UEC common shares listed on the Tokyo Stock Exchange."); FAC ¶132 ("Zama LP and Eiseman held themselves out as having a significant investment in UEC securities"). UEC's long-time understanding that Zama was an *investor* and not a registered broker-dealer is also consistent with the SEC filings it made in connection with the Merger Agreement[6], which referred to Zama as an "investor", and the Merger Agreement itself, where UEC represented that it had not retained a "broker."[7] Therefore, at the absolute latest, UEC's claim became time-barred on October 15, 2022 (for the First Engagement Letter) and October 28, 2022 (for the Second Engagement Letter), nearly six months before this suit was filed. Therefore, Count I should be dismissed. *Binance*, 2022 WL 976824, at *3 ("[T]he Section 29(b) claims are untimely as Plaintiffs knew of the violation, that the exchange was not registered, earlier than one year prior to filing.").

### C.    The First Engagement Letter Cannot Be Voided Under Section 29(b)

The First Engagement Letter between UEC and ZCA LP contemplates that ZCA LP will

---

[6]    *See, https://www.sec.gov/Archives/edgar/data/1822912/000119312522049154/d35234dprem14a.htm* ("On July 12, 2021, Mr. Ader was introduced via videoconference to Mr. Toji Takeuchi, Executive Officer and Head of the Corporate Planning Division of UEC and Board Member of TRLEI, by an investor in UEC.") (filed on February 22, 2023).

[7]    *See, https://www.sec.gov/Archives/edgar/data/1822912/000121390021053165/ea148997ex2-1_26capital.htm* ("There is no investment banker, broker or finder retained by or authorized to act on behalf of TRA or the Group Companies who might be entitled to any fee or commission from SPAC or any of its Affiliates (including, after the Closing, the Surviving Entity and its Subsidiaries) upon consummation of the Transactions.") (signed on October 15, 2021).

"work to make prospective introductions to SPACs and provide . . . assistance with respect to Transaction advice and Transaction negotiations with potential SPAC counterparties." Dkt. 33-2 at 2. Critically, however, the First Engagement Letter, *by its very design*, does not contemplate UEC paying ZCA LP any compensation, contingent or otherwise. *Id.* Because there is no "compensation" from UEC to ZCA LP whatsoever, the First Engagement Letter does not involve a "prohibit[ed] transaction" under the Exchange Act. *Dervan v. Gordian Grp. LLC*, No. 16-CV-1694 (AJN), 2017 WL 819494, at *11 (S.D.N.Y. Feb. 28, 2017) (describing "a ***person's receipt of transaction-based compensation*** in connection with effecting transactions in securities . . . ***as a hallmark of broker-dealer activity***") (internal quotation marks and citations omitted; emphasis added); *Jalak Jobanputra v. Yoon Kim*, No. 21 CIV. 7071 (ER), 2022 WL 4538201, at *9 (S.D.N.Y. Sept. 28, 2022) ("They also assert that Jobanputra alleges a fee-based compensation structure, in that the size of her purported entitlement directly correlates to the size and success of each investment; the ***SEC has deemed this kind of arrangement a hallmark of broker-dealer activity***") (internal quotation marks and citations omitted; emphasis added). In their pre-motion letter, Plaintiffs failed to identify any case where a Court voided a contract under Section 29(b) where the contract itself did not provide for any compensation whatsoever.[8]

Plaintiffs appear to argue that even though the First Engagement Letter did not provide for UEC to compensate ZCA LP, ZCA LP nonetheless received a benefit because: (1) Zama was a UEC shareholder and the value of its stock would substantially increase upon the consummation

---

[8]  In addition to not providing any compensation, the First Engagement Letter also does not require ZCA LP to have "regular[] participation" in broker activities: (1) it does not require ZCA LP to repeatedly sell securities; (2) it does not require the creation of investor advertisements; and (3) it does not require ZCA LP to solicit investors for a "string of related transactions." *Quantum Cap., LLC v. Banco de los Trabajadores,* No. 1:14-CV-23193-UU, 2016 WL 10536988, at *7 (S.D. Fla. Sept. 8, 2016) (noting that to be "engaged in the business" of effecting transactions, there must be allegations that the alleged broker "participate[d] in a string of related transactions, [sold] a large amount of securities, and use[d] advertisements or solicitations in connection with the sale of securities.").

of the merger; and (2) Zama participated in the SPAC sponsor and therefore will receive stock in the merged company, upon consummation of the merger. *See, e.g.,* FAC ¶35. But if every activist investor (such as Zama) was required to register as a "broker" simply for advocating for a beneficial corporate transaction because it would improve the value of its shareholdings, this would be a drastic expansion of federal broker-dealer law, as it would require registration for a large swath of what activist investors do on a regular basis. Moreover, Zama participated in the SPAC sponsor months prior to the execution of the Merger Agreement and with an entirely passive, at-risk investment that was not tied to a deal with the Okada Manila Resort. Nowhere in the FAC do Plaintiffs allege that Zama's investment in the SPAC sponsor was contingent on 26 Capital consummating a deal with the Okada Manila Resort or that Defendants had any contractual control over what target 26 Capital would select.

**D.    The Second Engagement Letter Cannot Be Voided Under Section 29(b)**

The Second Engagement Letter also cannot be voided under Section 29(b) of the Exchange Act. The Second Engagement Letter between UEC and ZCSA LLC contemplates that ZCSA LLC will provide certain "strategy and business consulting services" that are painstakingly delineated in its appendix. Dk. 33-3, at 7-10. Unlike the First Engagement Letter—where there was no compensation contemplated—the Second Engagement Letter does indeed provide ZCSA LLC compensation for its business consulting services. Specifically, in the Second Engagement Letter, UEC agreed to pay ZCSA LLC $2.5 million upon signing of the Second Engagement Letter and an additional $7.5 million if and when the Okada Manila Resort lists on a United States-based exchange. These payments were in no way contingent on the terms of the Merger Agreement— indeed, the Merger Agreement had already been signed weeks before the Second Engagement Letter was negotiated and executed. Further, under the express terms of the Second Engagement Letter, the $7.5 million payment was not tied in any way to a deal with 26 Capital—UEC was

obligated to pay it to ZCSA LLC regardless of whether UEC achieved its listing objective with 26 Capital or some other SPAC. Dkt. 33-3 ("For the avoidance of doubt, the deferred payment of $7,500,000 will only be paid if OMI stock is listed on a major US stock exchange such as the NASDAQ or the NYSE."). The fee is also not tied to the any specific quantum of investment.

Furthermore, the Second Engagement Letter did not require ZCSA LLC to provide UEC with any prohibited "broker-dealer" services. Generally, a "broker" is "any person engaged in the business of effecting transactions in securities for the account of others." Exchange Act § 3(a)(4)(A). The Second Engagement Letter contains absolutely no obligation for ZCSA LLC to "effect[] transactions in securities for the account of others." Instead, the Second Engagement Letter simply requires ZCSA LLC to conduct a series of administrative tasks, such as "Documentation of new lease agreement," "Review 26 Capital board member candidate list," and "Compensation benchmarking for executive/employee stock compensation pool." Dkt. 33-3, at 7-10. None of the specified tasks require ZCSA LLC to "effect[] transactions in securities."

The Plaintiffs' pre-motion to dismiss letter argues that ZCSA LLC was required to register as a broker because it "agreed to undertake activities to effectuate the closing of the Merger, including soliciting investors in the Merger, and advising Plaintiffs on matters related to the closing of the Merger." Dkt. 38 at 2. But this argument fails for at least three reasons.

*First*, even if ZCSA LLC agreed to "undertake activities to effectuate the closing of the Merger," this by itself would not require ZCSA LLC to register as a broker-dealer. For example, parties to a merger often hire vendors (such as auditors, accountants, website developers, printing staff) to assist in tasks required to "clos[e] a Merger." But such vendors obviously do not need to register as broker-dealers, just as ZCSA LLC did not need to register here. Simply put, there is no blanket requirement that any vendor hired to assist with the "closing of [a] merger," is required to

register with the SEC as a "broker."

**Second**, Plaintiffs argue that ZCSA LLC "advis[ed] Plaintiffs on matters related to the closing of the Merger," conceding that the Merger Agreement had been set-in-stone by the time ZCSA LLC became involved. Indeed, when the Second Engagement Letter was signed on October 28, 2021, the Merger Agreement had already been executed by both parties several weeks earlier. Because the terms of the agreement (including the rights and obligations of the parties) to the Merger Agreement were already set in stone when ZCSA LLC began its work, ZCSA LLC could not have had a role in negotiating or setting the terms of the Merger Agreement pursuant to the Second Engagement Letter. ZCSA LLC simply agreed to assist UEC with carrying out certain administrative obligations related to an already executed Merger Agreement.

**Third**, with respect to the alleged "solicit[ation] of investors," the Second Engagement Letter contains tasks such as "[p]repare materials for posting on … Investor website", "[p]repare Investor/Buy-Side Target List," "prepare talking points," "schedule roadshow meetings," and "[r]each out to target investors for participation in roadshow meetings." These tasks are administrative tasks that did not obligate ZCSA LLC to provide any investment advice to investors regarding the merits of the Merger Agreement or require ZCSA LLC to actively recruit investors, each of which may require broker-dealer registration in certain situations (and are actions in which ZCSA LLC did not take part). *DeHuff v. Digital Ally, Inc.,* No. CIVA 308CV327TSL-JCS, 2009 WL 4908581, at *3 (S.D. Miss. Dec. 11, 2009) (being a broker requires "regular participation in securities transactions, employment with the issuer of the securities, payment by commission as opposed to salary, history of selling the securities of other issuers, *involvement in advice to investors and active recruitment of investors*.") (emphasis added). Because the Second Engagement Letter does not require ZCSA LLC to either provide "advice to investors" or "actively

recruit[] investors," the Second Engagement Letter does not involve a prohibited transaction, requiring registration.

Further, as the FAC correctly acknowledges, each of these tasks were only assigned to ZCSA LLC "in part" (FAC ¶60). Therefore, to the extent actual "recruitment" of investors was required—and it was not—that outreach was conducted by UEC, *not* ZCSA LLC. Because the Second Engagement Letter does not require Defendants to actually engage in any broker-dealer activities, the Second Engagement Letter is not voidable under Section 29(b) of the Exchange Act.

\* \* \*

Finally, Plaintiffs point to an out-of-circuit case, suggesting that this Court should focus its inquiry not on the specific terms of the Engagement Letters, but instead on the (false) allegations in the FAC regarding Defendants' conduct. Dkt. 38 at 2 (citing *EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 61 (1st Cir. 2021)). To the extent there is any conflict between the First Circuit's holding in *EdgePoint* and the series of cases from the Second Circuit (including from the Southern District of New York) regarding the interpretation of Section 29(b) of the Exchange Act, this Court should follow precedent from this Circuit.

In any event, *EdgePoint* actually supports Defendants' position that when evaluating a claim under Section 29(b), a Court should focus on whether the relevant agreement can be performed legally. In *EdgePoint*, the relevant agreement "did not just give the investment firm the option whether to sell securities or to engage in an asset transaction. **On its face**, **it required the investment firm (and its unregistered arm) to effect a sale of securities**." *EMA Fin., LLC v. AppTech Corp.*, 21-cv-06049 (LJL), 2022 WL 4237144, at \*8 (S.D.N.Y. Sept. 13, 2022) (emphasis added; *citing EdgePoint*). Thus, "attempts to induce the sale of securities were inseparable from the contract's central purpose of selling Apothecare." *Id.* In other words, even under *EdgePoint*,

this Court's focus should be on the terms of the Engagement Letters when assessing whether to dismiss a claim under Section 29(b) of the Exchange Act.

## II.    THE SECOND ENGAGEMENT LETTER CANNOT BE VOIDED UNDER § 215(B) OF THE INVESTMENT ADVISERS ACT OF 1940

Plaintiffs allege that ZCSA LLC acted as an unregistered investment adviser in performing its duties under the Second Engagement Letter, and, therefore, the Second Engagement Letter is voidable under § 215(b) of the Investment Advisers Act of 1940 (the "Advisers Act"), 15 USC § 80b-15.  Plaintiffs' claim fails.

As an initial matter, for the "[Investment] Advisers Act to apply, the parties must have entered into an investment advisory agreement."  *Rapillo v. Fingerhut*, 09-CV-10429 (VSB), 2016 WL 11705140, at *10 (S.D.N.Y. Sept. 14, 2016); *see also Bogart v. Shearson Lehman Bros.*, No. 91 Civ. 1036 (LBS), (NG), 1993 WL 33643, at *3 (S.D.N.Y. Feb. 3, 1993) (dismissing claim under the advisors act because no allegations that there was a contract that contemplated investment advice).  Generally, an investment advisor is someone who "engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities."  15 U.S.C. § 80b-2(a)(11).

Moreover, "§ 215(b) voids a contract only where the contract would be invalid . . . where the contract was made illegally or requires illegal performance."  *Omega Overseas Partners, Ltd. v. Griffith*, No. 13-CV-4202 RJS, 2014 WL 3907082, at *3 (S.D.N.Y. Aug. 7, 2014).  Therefore, when evaluating whether to void a contract under § 215(b), the focus should be squarely on the terms of the contract.  *Id.*, at *4 ("Thus, under § 215(b), as under the common law, if an agreement can by its terms be performed lawfully, it will be treated as legal, even if performed in an illegal manner.") (internal quotation marks omitted).

In the Second Engagement Letter, ZCSA LLC only agreed to provide Plaintiffs with

"strategy and business consulting services." Dkt 33-3 at 2. Nothing in the Second Engagement Letter or its appendix contemplates ZCSA LLC providing UEC with advice regarding the "advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11). Indeed, Plaintiffs *expressly acknowledged* in the Second Engagement Letter that they were "***not relying on the advice*** of Zama for … ***investment [or] financial*** … *matters* as [UEC] is seeking and will rely on the advice of its own professionals and advisors for such matters." Further, the Second Engagement Letter has no provisions or obligations that require ZCSA LLC to provide investment advice to any third party investors. Count II therefore fails. *See Zinn v. Parrish*, 644 F.2d 360, 363 n.3 (7th Cir. 1981) ("It is crucial to note that nothing in Zinn's contract obligated him to provide advice on securities investments.").

UEC's claim under § 215(b) of the Advisers Act is also untimely. Such claims have a one year statute of limitation from when an "exercise of reasonable diligence, would have led to actual knowledge" that defendant was not a registered investment advisor. *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1042 (2d Cir. 1992). Just as in *Kahn*, the question as to whether ZCSA LLC is a registered investment advisor is a matter of public record. *Kahn*, 970 F.2d at 1042 ("The fact that KKR had not registered was a matter of public record"). Therefore, the statute of limitations under Count II started running on the day the Second Engagement Letter was signed and expired on October 28, 2022, making Count II untimely. *Id.* ("Since one year had passed before the instant complaint was filed, any claim to rescinding those contracts would also be barred by the statute of limitations.").

## III. IF COUNTS I AND II ARE DISMISSED, THIS ENTIRE ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

This Court has original jurisdiction over Counts I-II of the FAC and supplemental jurisdiction over Counts III-XI of the FAC, pursuant to 28 U.S.C. § 1367(a). A "district court[]

may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367] subsection (a) if …the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). While this is not a mandatory rule, in the usual case in which all federal-law claims are eliminated before trial, "the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness and comity—will point toward declining jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (cleaned up); *see also In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d. 56, 61 (2d. Cir. 1998) ("This Court and the Supreme Court have held that when the federal claims are dismissed the state claims should be dismissed as well.") (internal quotation marks omitted). Therefore, if this Court dismisses Counts I and II—which it should—then the entire FAC should be dismissed for lack of subject matter jurisdiction.

## IV.     ZAMA DOES NOT OWE FIDUCIARY DUTIES TO PLAINTIFFS

Plaintiffs' claim (Count IV) for breach of fiduciary duty fails. Under New York law, no claim for fiduciary duty can arise where a contract expressly disclaims such duties. *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 381-82 (S.D.N.Y. 2004) ("The agreements explicitly stated that Deutsche Bank was not acting as a fiduciary to the Seippels. Because contractual disclaimers of fiduciary duty are effective in New York, no fiduciary duty can arise . . .") (*citing Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998) (affirming dismissal of a breach of fiduciary duty claim on a motion to dismiss as a result of a contractual disclaimer)).

Both of the Engagement Letters expressly disclaim any fiduciary duties. For example, the First Engagement Letter states that "Zama is an independent contractor and ***will not act in any other capacity including as a fiduciary to the Company***" and that "[n]either this agreement nor the receipt by Zama of confidential information nor any other matter ***shall give rise to any fiduciary, equitable or contractual duties*** (including without limitation any duty of trust or

confidence)." Dkt. 33-2 at 2-3 (emphasis added). The Second Engagement Letter contains identical language. Dkt. 33-3 at 2-3. Under black letter New York law, these disclaimers require the dismissal of Count IV for breach of fiduciary duty.

Plaintiffs rely on *Veleron Holding, B.V. v. Morgan Stanley*, which held that "where a writing erects the essential structure of an agency relationship, even an explicit disclaimer cannot undo it." 117 F.Supp.3d 404, 452 (S.D.N.Y. 2015). In that case, the Court overrode a contractual disclaimer of an *agency* relationship (not a fiduciary relationship) because the contract between the parties expressly provided that a financial advisor (Morgan Stanley) had to act at the Plaintiff's direction, which the Court found was the hallmark of an agency relationship. *Id.* at 454 (Morgan Stanley "contractually required to subordinate its strategy" to Plaintiff). Neither of the Engagement Letters contain such control provisions. On the contrary, both of the Engagement Letters refer to Zama as an "independent contractor" and state that "Zama and its affiliates [are] ***not required to restrict its activities as a result of this engagement***." Dkt. 33-2 at 2; Dkt. 33-3 at 2 (emphasis added). Plaintiffs reliance on *Veleron* is therefore misplaced and the breach of fiduciary duty claims must be dismissed.

## V. PLAINTIFFS' FRAUD CLAIM (COUNT VII) FAILS AS A MATTER OF LAW

"Under New York law, the elements of a cause of action for fraud include a material misrepresentation or omission of a material fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff, and damages." *Aviles v. S&P Glob., Inc.,* No. 17CV2987JPOKHP, 2022 WL 1467589, at *6 (S.D.N.Y. Feb. 25, 2022), *report and recommendation adopted sub nom. In re Lifetrade Litig.*, No. 17-CV-2987 (JPO), 2022 WL 1448431 (S.D.N.Y. May 9, 2022). "Furthermore, where fraud is allegedly perpetrated by omission, Defendant must have had a duty to disclose the relevant fact." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 515 (S.D.N.Y. 2014).

Further, pursuant to Federal Rules of Civil Procedure Rule 9(a), "[i]n addition to proffering facts to support a plausible inference of fraud, the plaintiff must state with particularity the circumstances constituting fraud." *Aviles*, 2022 WL 1467589, at *8 (quotation marks and internal citations omitted). "In other words, the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent, or in the case of fraudulent omissions, the complaint must specify (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Id.* (quotation marks and internal citations omitted).

The FAC appears to suggest that Zama committed fraud-by-omission by failing to disclose its financial interest in the SPAC Sponsor, causing UEC to enter into an unfavorable merger agreement. Plaintiffs' argument fails for three reasons.

***First***, Zama did in fact disclose its intent to participate in the SPAC when it was negotiating the First Engagement Letter, and neither Mr. Takeuchi (who was leading the SPAC efforts at the company) or UEC's legal department stated that this would be an issue. *See infra* at 4. Therefore there was no "omission" by Zama.

***Second***—even if Zama had not disclosed its intent to participate in the SPAC sponsor, which it did—there would still be no fraud because Zama had no duty to disclose the specifics of its investment. Indeed, UEC expressly agreed in the Engagement Letters that Zama had no duty to disclose its investment positions *See* Dkt. 33-2 at 2 (UEC "agrees that neither [Zama nor its affiliates] is under a duty to disclose to the Company or use on behalf of the Company any information whatsoever about or derived from those activities or to account for any revenue or

profits obtained in connection with such activities."); Dkt. 33-3 at 2.

***Third***, Plaintiffs' cannot show reliance on Zama's allegedly fraudulent statements because they expressly disclaimed reliance on them. Plaintiffs' have misled the Court in this regard. Plaintiffs' pre-motion letter falsely avers that "[t]he First Engagement Letter . . . states that UEC is relying on Zama LP for 'considering and approving the terms and provisions of any Transaction.'" Dkt. 38 at 2. In fact, the First Engagement Letter states precisely the opposite: "***the Company*** will be solely responsible for finally considering and approving the terms and provisions of any Transaction" where the term "Company" is defined as "Universal Entertainment Corporation," ***not*** Zama. Because UEC expressly agreed that it was not relying on Zama for advice regarding any "Transaction," any fraud claim must fail.

Plaintiffs try to argue around these fatal issues by stating that their fraud claim is not a fraud-by-omission claim, but instead one where Defendants made "active representations to Plaintiffs." Dkt. 38 at 2 (*citing* FAC ¶¶ 92-95). However, the statements referenced in these paragraphs—*e.g.*, the transaction will "significantly enhance UEC's market valuation"; New Parent's "share price will steadily appreciate"; "broken deal would . . . hurt UEC's stock price"— are predictions about the future and not misstatements of fact. Predictions about the future are not actionable under New York law under a claim for fraud. *See, e.g., Consol. Bus Transit, Inc. v. Treiber Grp., LLC*, 948 N.Y.S.2d 679, 681 (2d Dept. 2012) ("[A] prediction of something which is . . . expected to occur in the future will not sustain an action for fraud"). Further, the FAC does not satisfy FRCP Rule 9(a) as it does not provide any explanation of "why the statements were fraudulent." *Aviles*, 2022 WL 1467589, at *8.

## VI.   PLAINTIFFS' REMAINING CLAIMS ALSO FAIL AS A MATTER OF LAW

Each of Plaintiffs' remaining claims should also be dismissed with prejudice.

<u>**Count III**</u>.   Count III for unjust enrichment must be dismissed because "a plaintiff may not

recover under . . . unjust enrichment where an enforceable contract governs the same subject matter." *Aubrey v. New Sch.*, No. 21-CV-4915 (KMK), 2022 WL 3867832, at \*14 (S.D.N.Y. Aug. 30, 2022) (cleaned up). For the reasons outlined above, Plaintiffs have no basis to void the Engagement Letters, and therefore the unjust enrichment claim fails. In their pre-motion letter, Plaintiffs argue "[w]here there a 'bona fide dispute over the existence of the contract,' a claim for unjust enrichment must not be dismissed as duplicative of a breach of contract claim." Dkt. 38 at 2. However, if Counts I and II are dismissed, there will no longer be any "bona fide dispute" over the enforceability of the Engagement Letters, and the unjust enrichment count must be dismissed.[9]

Furthermore, a contract bars unjust enrichment claims against not only the contractual counterparty, but also third-parties who were not signatories to the contract. *Mueller v. Michael Janssen Gallery PTE. Ltd.*, 225 F. Supp. 3d 201, 208 (S.D.N.Y. 2016) ("Mueller's unjust enrichment claim is barred by the Agreement's existence even though Newman was not a signatory to that Agreement."). Therefore this claim should be dismissed against all defendants.

Finally, the FAC only alleges that ZCSA LLC was enriched. *See* FAC ¶152. At the very least, this claim should be dismissed against all other defendants.

**Count V**. "To sustain a claim for aiding and abetting breach of fiduciary duty, a plaintiff

---

[9] Plaintiffs' pre-motion letter states that the unjust enrichment may stand alongside a contract claim because the FAC pleads a claim for fraudulent inducement. Dkt. 38 at 3. This argument fails for two primary reasons. *First*, to the extent a fraudulent inducement claim has been properly plead, it relates to the Merger Agreement and not either of the Engagement Letters, so it would not bar the dismissal of an unjust enrichment claims related to the either of the Engagement Letters. *Second*, Plaintiffs' pre-motion letter appears to be relying on an old line of cases that no longer reflect good law. The New York Court of Appeals has held that when a fraud claim and unjust enrichment claim are based on the same facts, the unjust enrichment claim should be dismissed. *Madison 92nd St. Assocs., LLC v. Courtyard Mgmt. Corp.*, 653449/2015, 2016 WL 6680458, at \*23 (Sup. Ct. N.Y. Cnty.) (dismissing unjust enrichment claim plead alongside a fraudulent inducement claim because the "Court of Appeals has . . . held that '[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'") (citing *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012)) (alterations in the original).

must allege: (1) a breach of fiduciary duty; (2) knowledge of the breach by the aider and abettor; (3) substantial assistance by the aider and abettor in achieving the breach; and (4) that plaintiff suffered damage as a result of the breach." *Melwani v. Lipton*, No. 17CIV8308PGGSLC, 2023 WL 1991423, at *5 (S.D.N.Y. Feb. 14, 2023). Therefore Plaintiffs must plead that (1) Mr. Takeuchi has already breached his fiduciary duties; and (2) the Defendants had actual knowledge of the breach. The Complaint contains no such non-conclusory allegations of knowledge of breach. At best, the Complaint alleges that the Mr. Takeuchi disclosed "information to Zama and/or Ader" and "convince[d] the UEC Board to extend the Termination Date" of the merger agreement, FAC at ¶189, (an agreement that was beneficial for UEC shareholders) hardly reaching to the level of "actual knowledge" of a breach of duty under foreign law. Nor do Plaintiffs plead that these actions were—or were understood by Defendants to be—outside of Mr. Takeuchi's authority, a very senior executive at UEC. This is fatal to the aiding and abetting claim. *See, e.g., In re Refco Sec. Litig.,* No. 08 CIV. 3065 JSR, 2012 WL 607612, at *3 (S.D.N.Y. Feb. 17, 2012) (holding that to sustain an aiding and abetting claim, defendants must have actual knowledge that the primary tortfeasor was acting in an unauthorized manner).

Plaintiffs' pre-motion to dismiss letter points to several paragraphs of the FAC (¶¶ 71-73, 77, 88-91, 100-101, 179), claiming that these plead "actual knowledge" of a breach of fiduciary duty by Mr. Takeuchi. But these paragraphs simply reference several conversations between the parties; not "actual knowledge" of any breach by Mr. Takeuchi. Moreover, these paragraphs only mention actions taken by Mr. Eiseman, not any of the other Defendants.

The FAC also appears to suggest that Mr. Eiseman and Mr. Littlejohn conspired with and aided abetted the Zama entities. However, it is black letter law that officers/employees/agents of a company cannot conspire or aid and abet with the company, requiring dismissal of that claim.

*See, e.g., Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008).

**Count VI**.  To successfully plead a negligence claim, a plaintiff must plead that Defendants have a duty of care to Plaintiffs.  *See, e.g., R.M. Bacon, LLC v. Saint-Gobain*, 959 F.3d 509, 516 (2d Cir. 2020) ("To state a claim for negligence under New York law, one must allege, inter alia, that the defendant owed a duty of care to the plaintiff.").  However, because Defendants owe no duties (fiduciary or otherwise) to Plaintiffs (*see infra* at IV), Plaintiffs' negligence claim fails. Further, the FAC fails to plead that Defendants actually did not adequately perform the specific tasks they contracted for.  The negligence claim fails on this ground as well.

**Count VIII**.  Plaintiffs' conspiracy claim fails because "[t]o maintain a civil conspiracy action, the plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, ***to achieve the unlawful end***." *Chen Gang v. Zhao Zhizhen*, 799 F. App'x 16, 19 (2d Cir. 2020) (emphasis added).  Plaintiffs' pre-motion letter argues that the FAC pleads a meeting of the minds because "Plaintiffs' allegations regarding the secret subscription agreement between Eiseman, on behalf of Zama Fund, and Ader are clearly a meeting of the minds."  Dkt. 38 at 3.  But there is absolutely nothing "unlawful" about Mr. Eiseman or Zama Capital Master Fund making an investment in a SPAC sponsor, and therefore such a "meeting of the minds" cannot sustain a civil conspiracy claim.  Further these allegations only relate to Eiseman and Zama Capital Master Fund, not defendants Littlejohn, ZCA LP, or ZCSA LLC.  Count VIII therefore fails.

**Count IX**. Count IX alleges that Zama breached its contracts by sharing confidential information.  But the Engagement Letters permit Zama to share confidential information with third parties who have "signed a confidentiality agreement or obligation with Zama."  Here, Plaintiffs do not allege Zama shared information with anyone who has not signed such an agreement, and

therefore this claim should be dismissed. *Golub Cap. LLC v. NB Alternatives Advisers LLC*, 21-cv-3991 (LJL), 2022 WL 540653, at *13 (S.D.N.Y. Feb. 22, 2022) (dismissing a claim for breach of a confidentiality agreement because "Plaintiff has not alleged that [Defendant] did anything it was not allowed to do under the NDA").

**Count X**.  Count X for breach of good faith and fair dealing must be dismissed as it is duplicative of Plaintiffs' breach of contract claim (Count IX).  Under black letter New York law, a claim for breach of covenant of good faith and fair dealing cannot be sustained alongside a breach of contract claim.  *Alter v. Bogoricin*,  No. 97 CIV. 0662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 4, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative . . .").  Count X should therefore be dismissed.

**Count XI**.  Count XI claims that Zama acted with "gross negligence" and "willful misconduct" under the Engagement Letters. But Plaintiffs do not identify any single instance that Zama failed to perform its actual contracted responsibilities, as requested by UEC, in a competent manner. Therefore this count fails.

**All Claims Against Defendant Zama Capital Master Fund**.  Only two claims are brought against Defendant Zama Capital Master Fund: conspiracy and aiding and abetting breach of fiduciary duty.  However, there is no claim that this entity had any communications with any party, requiring a complete dismissal for this defendant.

## CONCLUSION

For the forgoing reasons, Defendants respectfully asks the Court to grant its motion to dismiss, and to dismiss the Complaint with prejudice and without leave to amend.

Dated: June 23, 2023
New York, New York

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By: /s/ *Anil Makhijani*

Anil Makhijani
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorney for Alexander Eiseman,
Zama Capital Advisors LP, Zama Capital Strategy Advisors
LLC, Zama Capital Master Fund, LP and Christian Littlejohn*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of June 2023, I caused a copy of the foregoing Defendants' Motion to Dismiss the First Amended Complaint to be filed with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

 /s/ Anil Makhijani
Anil Makhijani
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

*Attorney for Alexander Eiseman,*
*Zama Capital Advisors LP, Zama Capital Strategy*
*Advisors LLC, Zama Capital Master Fund, LP and*
*Christian Littlejohn*
