## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNIVERSAL ENTERTAINMENT
CORPORATION, UE RESORTS
INTERNATIONAL, INC. f/k/a OKADA
MANILA INTERNATIONAL, INC. and
TIGER RESORT, LEISURE AND
ENTERTAINMENT, INC.,

        Plaintiffs,

    v.

ALEXANDER EISEMAN, ZAMA
CAPITAL ADVISORS LP, ZAMA
CAPITAL STRATEGY ADVISORS LLC,
ZAMA CAPITAL MASTER FUND, LP and
CHRISTIAN LITTLEJOHN

        Defendants.

Case No. 23-CIV-2250 (LGS)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION, PURSUANT TO FED. R. CIV. P. 9(b), 12(b)(1), AND 12(b)(6), OF DEFENDANTS ALEXANDER EISEMAN, ZAMA CAPITAL ADVISORS LP, ZAMA CAPITAL STRATEGY ADVISORS LLC, ZAMA CAPITAL MASTER FUND, LP, AND CHRISTIAN LITTLEJOHN TO DISMISS FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ................................................................................................................................1

I.     THE ENGAGEMENT LETTERS CANNOT BE VOIDED UNDER SECTION 29(B) .................................................................................................................................1

      A.     Plaintiffs Cannot Bring Claims Under Section 29(b) Of The Exchange Act ..........1

      B.     Statute Of Limitations Has Run On Count I ............................................................2

      C.     The First Engagement Letter Cannot Be Voided Under Section 29(b) ...................2

      D.     The Second Engagement Letter Cannot Be Voided Under Section 29(b)...............3

II.    THE SECOND ENGAGEMENT LETTER CANNOT BE VOIDED UNDER § 215(B) .................................................................................................................................4

III.   ZAMA DOES NOT OWE FIDUCIARY DUTIES TO PLAINTIFFS ..............................6

IV.   PLAINTIFFS' FRAUD CLAIM (COUNT VII) FAILS AS A MATTER OF LAW..........7

V.    PLAINTIFFS' REMAINING CLAIMS ALSO FAIL AS A MATTER OF LAW ............8

CONCLUSION ..........................................................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*,
   No. 20 CIV. 10028 (KPF), 2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021) .............................5

*Antares Mgmt. LLC v. Galt Glob. Cap., Inc.*,
   No. 12-CV-6075 TPG, 2013 WL 1209799 (S.D.N.Y. Mar. 22, 2013) ...................................1

*Aubrey v. New Sch.*,
   No. 21-CV-4915 (KMK), 2022 WL 3867832 (S.D.N.Y. Aug. 30, 2022)................................8

*Aviles v. S&P Glob., Inc.*,
   No. 17CV2987JPOKHP, 2022 WL 1467589 (S.D.N.Y. Feb. 25, 2022)..................................7

*Berman v. Morgan Keegan & Co.*,
   No. 10 CIV. 5866 PKC, 2011 WL 1002683 (S.D.N.Y March 14, 2011)................................9

*Cavello Bay Reinsurance Ltd. v. Shubin Stein*,
   986 F.3d 161 (2d Cir. 2021)............................................................................................1, 2

*Cavello Bay Reinsurance Ltd. v. Stein*,
   No. 18-CV-11362 (KMK), 2020 WL 1445713 (S.D.N.Y. Mar. 25, 2020) ...........................1

*Chen Gang v. Zhao Zhizhen*,
   799 F. App'x 16 (2d Cir. 2020) .........................................................................................9

*Cooper v. Parsky*,
   140 F.3d 433 (2d Cir. 1998)...............................................................................................6

*Dervan v. Gordian Grp. LLC*,
   No. 16-CV-1694 (AJN), 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017)...................................3

*EBC I, Inc. v. Goldman Sachs & Co.*,
   777 N.Y.S.2d 440 (1st Dep't 2004) .....................................................................................6

*Found. Ventures, LLC v. F2G, Ltd.*,
   No. 08 CIV. 10066 PKL, 2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010)...............................4

*Gilford Partners v. Sensormatic Elecs. Corp.*,
   No. 96 C 4072, 1997 WL 757495 (N.D. Ill. Nov. 24, 1997).....................................................8

*Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*,
   903 F. Supp. 479 (S.D.N.Y. 1995) .......................................................................................1

*Melwani v. Lipton*,
    No. 17CIV8308PGGSLC, 2023 WL 1991423 (S.D.N.Y. Feb. 14, 2023)...............................9

*Patriarch Partners Agency Servs. v. Zohar CDO 2003-I, Ltd.*,
    16 Civ. 4488 (VM), 2017 WL 1535385 (S.D.N.Y. Apr. 20, 2017)....................................7

*S & K Sales Co. v. Nike, Inc.*,
    816 F.2d 843 (2d Cir. 1987)...................................................................................9

*S.E.C. v. Benger*,
    934 F. Supp. 2d 1008 (N.D. Ill. 2013) ...................................................................2

*Samba Enterprises, LLC v. iMesh, Inc.*,
    No. 06 CIV. 7660 (DC), 2009 WL 705537 (S.D.N.Y. Mar. 19, 2009) ...................6

*In re Shulman Transport Enterprises, Inc.*,
    744 F.2d 293 (2d Cir. 1984)...................................................................................6

*Spinelli v. NFL*,
    903 F.3d 185 (2d Cir. 2018)...................................................................................6

*United States v. Onsa*,
    523 F. App'x 63 (2d Cir. 2013) ........................................................................5, 6

*Veleron Holding, B.V. v. Morgan Stanley*,
    117 F. Supp. 3d 404 (S.D.N.Y. 2015)....................................................................7

## Statutes and Rules

Investment Advisors Act § 215(B) .....................................................................5, 6

15 U.S.C. § 80b–2 .................................................................................................5

Securities Exchange Act § 10(b)...........................................................................1

Securities Exchange Act § 15(a)........................................................................1, 2

Securities Exchange Act § 29(b)...................................................................1, 2, 3, 4

Federal Rules of Civil Procedure Rule 9(b).....................................................7, 8, 9

Defendants respectfully submit this reply memorandum of law in further support of their Motion to Dismiss the FAC.[1]

## ARGUMENT

## I.   THE ENGAGEMENT LETTERS CANNOT BE VOIDED UNDER SECTION 29(B)

### A.   Plaintiffs Cannot Bring Claims Under Section 29(b) Of The Exchange Act

Count I should be dismissed because Plaintiffs are all foreign entities and therefore are not in the "class of persons that the Exchange Act was designed to protect."  (Br. 9.)  Neither of the cases cited by Plaintiffs (Opp. 14) holds otherwise as neither addresses the question of whether a foreign plaintiff can bring a Section 29(b) claim.[2]  Plaintiffs fail to cite a single case where a foreign plaintiff survived an extraterritoriality challenge to Section 29(b) of the Exchange Act.

By contrast, Plaintiffs cannot distinguish *Cavello Bay*.  (Br. 9.)  In that case, (1) the plaintiff was a foreign entity, just like Plaintiff UEC; (2) the defendant was New York-based entity, just like ZCSA LLC and ZCA LP; (3) a claim was brought under Section 29(b) of the Exchange Act, just like Count I; (4) the claims included the alleged involvement of a "New York financial advisory firm"; and (5) the complaint alleged a solicitation to invest into a company with its "principal place of business in New York."  *Cavello Bay Reins. Ltd. v. Stein*, No. 18-CV-11362 (KMK), 2020 WL 1445713, at *1-3 (S.D.N.Y. Mar. 25, 2020*), aff'd sub nom. Cavello Bay Reins. Ltd. v. Shubin Stein*, 986 F.3d 161 (2d Cir. 2021).  Plaintiffs note that *Cavello Bay* was a §10(b) case that did not implicate §15(a) of the Exchange Act.  But that is a distinction without a

---

[1]   "Opp." refers to Plaintiffs' memorandum of law in opposition to this motion.  *See* Dkt. 54. "Br." refers to Defendants' opening memorandum of law in support of this motion.  *See* Dkt. 50. All other capitalized terms not defined herein are defined as they were in the Motion to Dismiss.

[2]   *Antares Mgmt. LLC v. Galt Glob. Cap., Inc.*, No. 12-CV-6075 TPG, 2013 WL 1209799, at *8 (S.D.N.Y. Mar. 22, 2013) (claim survived motion to dismiss on other grounds but no challenge to the jurisdictional scope of Section 29(b)); *Kidder Peabody & Co. v. Unigestion Int'l, Ltd.*, 903 F. Supp. 479, 498 (S.D.N.Y. 1995) (similar).

difference, since courts interpret the extraterritorial application of both provisions using the same legal framework.  *See, e.g., S.E.C. v. Benger*, 934 F. Supp. 2d 1008, 1013 (N.D. Ill. 2013) (dismissing claim under §15(a) because of its limited extraterritorial application).  This Court should dismiss Plaintiffs' Section 29(b) claim (Count I), just as the court did in *Cavello Bay*.

**B.**     **Statute Of Limitations Has Run On Count I**

Count I should also be dismissed because the Plaintiffs' statute of limitation has run on that claim.  Plaintiffs do not dispute that Section 29(b) of the Exchange Act has a one-year statute of limitations.  (Br. 9-10.)  Plaintiffs also do not dispute that they signed a merger agreement where they represented that they did not use a broker in connection with the transaction.  *Id.*  Finally, Plaintiffs do not dispute that their top executives signed SEC filings which described Zama as an "investor," not a broker.  *Id.*  Plaintiffs offer no meaningful response as to why they have made these representations to their counterparty and to investors if they actually had a good-faith belief that Zama was a broker.  In fact, plaintiffs have always understood that Zama—a two-employee New York-based hedge fund—is *not* a registered broker-dealer.  Count I is therefore untimely.

**C.**     **The First Engagement Letter Cannot Be Voided Under Section 29(b)**

Even if the Court finds that Count I cannot be dismissed based on these threshold issues that apply to both Engagement Letters, Court I should be dismissed because the First Engagement Letter is not a broker-dealer contract.   Plaintiffs concede (Opp. 8.) that whether a contract contemplates the payment of a "commission" is a critical factor in determining whether a contract is a "broker-dealer" contract under Section 29(b) of the Exchange Act.  They also do not dispute that the First Engagement Letter does not contemplate UEC paying ZCA LP any commission or compensation whatsoever.  ***Plaintiffs fail to cite a single case where a Court voided a contract under Section 29(b) where no compensation was provided under the terms of the contract.***  This

is fatal to Plaintiffs' claim.[3]  Plaintiffs are asking this Court for unprecedented relief.

Perhaps recognizing the hole in their argument, Plaintiffs argue (Opp. 9-10) that Defendants *could* benefit from the First Engagement Letter because they are shareholders in UEC and 26 Capital's sponsor, whose values could potentially increase.  But that argument fails for several reasons.  *First*, Plaintiffs cite no authority for the proposition that where a party could potentially benefit from a transaction due to increased value of its existing shareholdings, that could be considered "transaction-based compensation" in an alleged broker-deal contract.[4] *Second,* Zama participated in the SPAC at "fair value," and therefore that investment was not compensation.[5]  *Third*, even if Zama did receive "compensation"—which it indisputably did not— that would be outside of the four corners of the contract and therefore not relevant for the purposes of a Section 29(b) claim, where the focus should be on the terms of the contract.  (Br. 8-9.)

### D.    The Second Engagement Letter Cannot Be Voided Under Section 29(b)

The Second Engagement Letter also cannot be voided under Section 29(b).  Plaintiffs argue (Opp. 10-11) that it required ZCSA LLC to review and prepare certain materials for prospective

---

[3]    Plaintiffs cite *Dervan v. Gordian Grp. LLC*, No. 16-CV-1694 (AJN), 2017 WL 819494 (S.D.N.Y. Feb. 28, 2017), for the proposition that "receipt of transaction-based compensation is not a categorical rule."  (Br. 10.)  But here, it is undisputed that there was **no compensation whatsoever** provided under the express terms of the contract, "transaction-based" or otherwise.

[4]    Such an expansion of law would also create dangerous precedent, as it would imply that any private equity fund manager or activist investor who agrees to find a merger partner for one of its portfolio companies could be deemed a broker-dealer for its actions, simply because it stands to benefit from an increased value of its portfolio.  There is no legal basis for creating such a precedent.

[5]    Plaintiffs appear to suggest that because Zama purchased its shares in the SPAC at $4.5 million while another investor purchased shares for $25 million, Zama was somehow "compensated." (Opp. 9-10.)  This is an incredibly misleading argument by Plaintiffs.  Zama purchased these shares *prior* to the signing of the Merger Agreement, while the other investor (Rimu) purchased those shares *after* the signing of the Merger Agreement.  Furthermore, Zama's passive investment in the SPAC took place before 26 Capital and UEC ever met.  Therefore, the certainly of a signed merger agreement obviously changed the "fair value" of the shares in the SPAC sponsor.

3

investors, including, *inter alia*, "FAQ's for discussion" and  "roadshow presentation" materials. But this is not "broker-dealer" activity, because, even based on Plaintiffs' cases, the Second Engagement Letter did not require Defendants to "mak[e] valuations as to the merits of the investment" or require Defendants to be involved in "negotiations between the issuer and investor." (Opp. 8.)  Preparing investor materials and organizing meetings of investors are classic tasks done by public relation firms, who are not required to register as broker dealers, where (as here) there is no allegation that defendant "regularly engages in securities transactions" or "previously sold securities of other issuers." *Found. Ventures, LLC v. F2G, Ltd.*, No. 08 CIV. 10066 PKL, 2010 WL 3187294, at *7 (S.D.N.Y. Aug. 11, 2010) (Section 29(b) claim dismissed even though it was "undisputed" that defendant participated in preparing investor materials).[6]

Plaintiffs also argue (Opp. 11-12) that "[t]he Second Engagement Letter . . . required Zama LLC's involvement in negotiations between UEC and 26 Capital" and required ZCSA LLC to "advise on the merits of the Merger."  These are frivolous arguments.  It is undisputed that the Merger Agreement was signed on October 15, 2021 (FAC ¶43) and the Second Engagement Letter was not executed until weeks later (FAC ¶54).  The Second Engagement Letter cannot have required ZCSA LLC to be involved in advising on or negotiating a merger that was already the subject of a definitive agreement.

## II.     THE SECOND ENGAGEMENT LETTER CANNOT BE VOIDED UNDER § 215(B)

Count II should also be dismissed.  Plaintiffs do not dispute that in deciding a Section

---

[6]   Public relations firms advertise virtually identical services to the services listed in the Second Engagement Letter.  *See, e.g.,*  https://www.collectedstrategies.com/what-we-do/capabilities ("Preparing for roadshows and investor meetings", "Creating and designing investor presentations");  https://www.joelefrank.com/expertise/#section-10   ("manag[ing] complicated disclosure issues"; assist with investor "presentations, conference call scripts and press releases"). If the Court finds these tasks to be "broker-dealer" activity, it could require registration for all PR firms who provide services in merger and acquisition contexts.

4

215(b) claim, the Court must focus on the plain terms of the contract.  (Br. 16.)  Under its plain

terms, the Second Engagement Letter does not require ZCSA LLC to advise Plaintiffs on the

"value of securities" or provide advice to Plaintiffs regarding "investing in, purchasing, or selling

securities."  15 U.S.C. § 80b–2.  Indeed, none of the items identified by Plaintiffs—*e.g.*, "[a]ssist

in review and response to . . . SEC proxy comments"; "[r]eview . . . draft proxy statements" (Opp.

11-12)—have anything to do with giving advice on the "value of securities" or providing advice

to Plaintiff UEC regarding what securities UEC should be "purchasing" and "selling."  Plaintiffs

own authorities confirm that the activities listed in the Second Engagement Letter are not

investment advisory services.  *See, e.g., United States v. Onsa*, 523 F. App'x 63, 64 (2d Cir. 2013)

(investment advisory services include "distributing reports"; "manag[ing] the funds of others for

compensation"; "exercising control over purchases and sales" of securities for a customer).

Plaintiffs also concede that the Second Engagement Letter—which was negotiated at arms-

length between two sophisticated parties—stated that ZCSA LLC would *not* be providing any

investment advice to UEC and that UEC would hire other advisors to provide such advice.  Dkt.

33-3 at 2 ("The Company acknowledges that it is not relying on the advice of Zama for . . .

investment . . . matters as it is seeking and will rely on the advice of its own professionals and

advisors for such matters.").  This express disclaimer should resolve Count II, as the case law is

clear that this language prevents the creation of an investment advisory contract or relationship.

*See, e.g., In re Allianz Glob. Invs. U.S. LLC Alpha Series Litig.*, No. 20 CIV. 10028 (KPF), 2021

WL 4481215, at *23 (S.D.N.Y. Sept. 30, 2021) ("Plaintiffs have not adequately pleaded the

existence of any independent, direct investment advisory relationship [because Defendants]

explicitly disclaimed the creation of a formal investment advisory relationship.").  Plaintiffs cite

to the Second Circuit's decision *Onsa*, which they argue invalidates this contractual language.

(Opp. 16.)  This argument misses the mark.  *Osna* was not brought under Section 215(b) of the IAA, nor did it involve any contractual disclaimers against the creation of an investment advisory relationship.  *Onsa*, 523 F. App'x 63 at 64.  Count II should therefore be dismissed.

## III.   ZAMA DOES NOT OWE FIDUCIARY DUTIES TO PLAINTIFFS

As described in Defendants' opening brief, no claim for fiduciary duty can arise where a contract expressly disclaims such duties.  *Spinelli v. NFL*, 903 F.3d 185, 207 (2d Cir. 2018) ("We have previously held that a breach of fiduciary duty claim fails where the governing agreement" disclaims fiduciary duties) (*citing Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)).[7]

Plaintiffs ask the Court to ignore this disclaimer and instead look at the "real character" of the contract.  (Opp. 19.)  But tellingly, Plaintiffs fail to identify a basis for the purported "real character" in the text of either of the Engagement Letters.  (Opp. 17-19.)  Plaintiffs hand-waving about the "character" of the Engagement Letters cannot sustain their claim.

The limited precedent cited by Plaintiffs (Opp. 17-18) in which courts overlook fiduciary disclaimers due to an "agency" relationship is inapplicable here.  The contracts in those cases: (1) were titled "agency" contracts; (2) had express provisions which identified the defendant as an "agent" of plaintiff; and (3) expressly required and delegated authority to the defendant to "act for" plaintiff,[8] while the plaintiff retained some control.  *See Samba Enterprises, LLC v. iMesh, Inc.*, No. 06 CIV. 7660 (DC), 2009 WL 705537, at *7 (S.D.N.Y. Mar. 19, 2009) ("The Agreement

---

[7]  Plaintiffs argue (Opp. 17-18) that a fiduciary relationship exists separate from the Engagement Letters.  But the FAC does not plead such an extra-contractual duty.  Plaintiffs cite to *EBC I, Inc. v. Goldman, Sachs & Co.*, but in that case, Goldman Sachs had a pre-existing fiduciary relationship with the plaintiff, that did not exist here.  *EBC I, Inc. v. Goldman Sachs & Co.*, 777 N.Y.S.2d 440, 443 (1st Dep't 2004)  ("cause of action for breach of fiduciary duty was correctly sustained upon allegations showing a pre-existing relationship between plaintiff and defendant").

[8]  *See also In re Shulman Transport Enterprises, Inc.*, 744 F.2d 293, 295 (2d Cir. 1984) (agency requires, *inter alia*, "manifestation of consent by one person to another that the other **shall act on his behalf** and subject to his control, and **consent by the other so to act**") (emphasis added).

is entitled, 'Agency Agreement,' and defines Samba as 'Agent'"; Samba required to sell software

in return for revenue share); *Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 453

(S.D.N.Y. 2015) (parties signed an "Agency Disposal Agreement" and plaintiff "engaged Morgan

Stanley to act as its agent in respect of the disposal of part or all of the Securities.").[9]   None of

this is true of the Engagement Letters, and therefore these cases are inapposite.

## IV.   PLAINTIFFS' FRAUD CLAIM (COUNT VII) FAILS AS A MATTER OF LAW

Plaintiffs concede (Opp. 19) that Zama disclosed to them that it intended to participate in

the SPAC transaction prior to signing the First Engagement Letter.  This alone warrants dismissal

of their fraud claim, which is premised on the allegation that Defendants hid that investment.

Plaintiffs argue that Zama's disclosure of their intent to participate in the SPAC was "a highly

equivocal statement designed to mislead (as discovery will show)."   *Id.*  But FRCP Rule 9(b)

requires Plaintiffs to "state with particularity the circumstances constituting fraud."  *Aviles v. S&P*

*Glob., Inc.*, No. 17CV2987JPOKHP, 2022  WL  1467589, at  *6  (S.D.N.Y. Feb. 25, 2022)

(quotation marks and internal citations omitted).  It does not permit Plaintiffs to wait until after

discovery to adequately plead their claim.

Plaintiffs also argue ZCSA LLC had a duty to disclose Zama's investment in the SPAC

sponsor[10] because "Plaintiffs  . . . acted on the mistaken belief that Defendants' interests were

aligned with their own."  (Opp. 19-20.)  But this argument defies logic as the incentives UEC

sought to create in the Second Engagement Letter were aligned with Zama's existing incentives—

---

[9]   In the other case cited by Plaintiffs, the Court actually found defendant was *not* an agent.  *See*
*Patriarch Partners Agency Servs. v. Zohar CDO 2003-I, Ltd.*, 16 Civ. 4488 (VM), 2017 WL
1535385, at *5–6 (S.D.N.Y. Apr. 20, 2017) ("Based on these two sections alone, it is doubtful that
an agency relationship existed between PPAS and the Zohar Funds . . .")

[10]   The Engagement Letters also expressly state that ZCSA LLC does not have a duty to disclose
any of its own investments, and has the right to trade for its own account.  (Br. 5-6.)

the Second Engagement Letter was designed by UEC to pay $7.5 million to ZCSA LLC if the merger closed.  Likewise, Zama's investment in the SPAC increases in value when the merger closes.

Finally, Plaintiffs allege (Opp. 20) that predictions about the future are actionable as fraud, but neither of the cases they cite relate to common law fraud claims under New York law.  In any event, even if such "predictions" were actionable under New York law, FRCP Rule 9(b) requires Plaintiffs to plead particular facts that explain *why* a prediction would be unreasonable; "boilerplate allegations that a statement is misleading" are not enough.  *Gilford Partners v. Sensormatic Elecs. Corp.*, No. 96 C 4072, 1997 WL 757495, at *16 (N.D. Ill. Nov. 24, 1997).[11]

## V.  PLAINTIFFS' REMAINING CLAIMS ALSO FAIL AS A MATTER OF LAW

**Count III**.  Count III for unjust enrichment must be dismissed because "a plaintiff may not recover under . . . unjust enrichment where an enforceable contract governs the same subject matter." *Aubrey v. New Sch.*, No. 21-CV-4915 (KMK), 2022 WL 3867832, at *14 (S.D.N.Y. Aug. 30, 2022) (cleaned up).  For the first time, Plaintiffs argue (Opp. 22) that the unjust enrichment claim cannot be dismissed because the Engagement Letters were "fraudulently induced." However, the Complaint does not have a claim for fraudulent inducement of the Engagement Letters.  The FAC has one fraud count, but that count pertains to the alleged fraudulent inducement of the *Merger Agreement*, and not the Engagement Letters.

**Count V**. "To sustain a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege: (1) a breach of fiduciary duty; (2) knowledge of the breach by the aider and abettor;

---

[11]   Here, Plaintiffs' "boilerplate allegations" about the proposed merger with 26 Capital being a bad deal are particularly problematic given objective market-based evidence contradicts Plaintiffs' made-for-litigation fabrications:  UEC stock increased by nearly 10% when the merger agreement was signed and declined by 9% when 26 Capital initiated its litigation in Delaware.  The proposed merger agreement was objectively a good deal.

(3) substantial assistance by the aider and abettor in achieving the breach; and (4) that plaintiff suffered damage as a result of the breach." *Melwani v. Lipton*, No. 17CIV8308PGGSLC, 2023 WL 1991423, at *5 (S.D.N.Y. Feb. 14, 2023).   "[The] heightened pleading requirement of Rule 9(b) applies equally to . . . claims alleging aiding and abetting breach of fiduciary duty sounding in fraud."   *Berman v. Morgan Keegan & Co*., No. 10 CIV. 5866 PKC, 2011 WL 1002683, at *7 (S.D.N.Y March 14, 2011) (*citing S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843 (2d Cir. 1987)). Therefore, to sustain a claim, Plaintiffs must plead sufficient facts supporting a "strong inference" that Defendants had "actual knowledge of an alleged breach of fiduciary duty. *Id.* at *37.

Plaintiffs' aiding and abetting claim is premised on conduct of executive Toji Takeuchi, a senior officer of Plaintiff UEC and director of Plaintiff TRLEI.  Plaintiffs do not dispute that Mr. Takeuchi was a very senior executive of Plaintiff UEC and a director of Plaintiff TRLEI.  (Br. 3.) Nor does the FAC allege that Mr. Takeuchi acted outside of his authority in pressing the deal forward.  The FAC also does not allege that Mr. Takeuchi sought to achieve any personal benefit through his actions or that he was conflicted in any way.  Finally, Plaintiffs do not dispute that based on objective evidence, the merger transaction was highly beneficial for UEC (given its share price went up by 10% when the merger agreement was announced).  In light of these undisputed facts, Plaintiffs simply have not plead sufficient facts to create a "strong inference" that Defendants had ***actual knowledge*** of Mr. Takeuchi's alleged breach of fiduciary duty.

**Count VIII**.  Consistent with their hand-waving approach, Plaintiffs assert (Opp. 23) that "Defendants misunderstand how conspiracy works under New York law," but do not cite any case law to explain their view how it does.  To sustain a conspiracy claim there must be an alleged "meeting of the minds" to achieve an "unlawful end." *Chen Gang v. Zhao Zhizhen*, 799 F. App'x 16, 19 (2d Cir. 2020).  The only "meeting of the minds" identified by Plaintiffs is the Subscription

Agreement, but Plaintiffs cite no law to suggest it is "unlawful" to invest in a SPAC sponsor.  Nor do Plaintiffs allege that the Subscription Agreement amounts to an agreement to commit fraud (or any other tort).  For this reason, Count VIII should be dismissed, as should claims against defendant Zama Master Capital Fund, whose only alleged connection to this lawsuit is its status as a party to the Subscription Agreement.[12]

**Count IX**. Count IX alleges that Zama breached its contracts by sharing confidential information.  Plaintiffs only response is that "Defendants were not permitted to make such disclosures."  (Opp. 24.)  But that statement is directly contradicted by the Engagement Letters which expressly permit such disclosures of confidential information to 26 Capital and Calabrese, each of whom were subject to confidentiality agreements.  (Br. 24-25.)

**Count X**.  Count X for breach of good faith and fair dealing must be dismissed as it is duplicative of Plaintiffs' breach of contract claim (Count IX).  (Br. 25.)  Plaintiffs argue (Opp. 24) that these two claims are based on different facts and therefore this count is not subject to dismissal. But this is contradicted by their pleading.  Both counts are premised on the same set of facts, *i.e.*, steps that certain Defendants allegedly took (*e.g.*, sending information to accountants, creating financial statements) to ensure a successful merger.  (*Compare* FAC ¶184 with FAC ¶189.)

## CONCLUSION

For the forgoing reasons, Defendants respectfully asks the Court to grant its motion to dismiss, and to dismiss the FAC with prejudice and without leave to amend.

---

[12]   Plaintiffs argue that ZCSA LLC and ZCA LP conspired with each other.  But there is simply no allegations in the FAC that ZCSA LLC and ZCA LP had any agreement to achieve an unlawful end.

Dated: August 4, 2023
      New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:  /s/ *Anil Makhijani*

Nicholas Hoy
Anil Makhijani
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

*Attorneys for Alexander Eiseman,*
*Zama Capital Advisors LP, Zama Capital Strategy Advisors*
*LLC, Zama Capital Master Fund, LP and Christian Littlejohn*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August 2023, I caused a copy of the foregoing

Defendants' Reply Memorandum of Law In Support of Motion to Dismiss the First Amended

Complaint to be filed with the Clerk of Court using the CM/ECF system.  Notice of this filing will

be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Anil Makhijani
Anil Makhijani
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100

*Attorney for Alexander Eiseman,*
*Zama Capital Advisors LP, Zama Capital Strategy*
*Advisors LLC, Zama Capital Master Fund, LP and*
*Christian Littlejohn*